(32 Misc. Rep. 517.)

### PEOPLE ex rel. DUNN v. HAM, Commissioner.

(Supreme Court, Special Term, Albany County.   July 31, 1900.)

1. MUNICIPAL CORPORATIONS—STATION-HOUSE KEEPER—REMOVAL—ORDINANCE
    —VALIDITY.
        Under Charter of Cities of the Second Class (Laws 1898, c. 182, § 177), providing that the police force shall, as to its component parts, remain in each city as now constituted until the same shall be changed by the common council thereof, which has power, by ordinance, to determine the number of police, and the classes or grades into which they shall be divided, but the number of members shall not be increased without the approval of the board of estimate and apportionment, etc., an ordinance abolishing the position in the police force known as "station-house keeper" is void, the power to "determine" the number of the force not giving the power to abolish a division thereof.

2. SAME—POWERS—CONSTRUCTION.
        Any fair, reasonable doubt concerning the existence of power conferred by statute or charter on a municipal corporation is resolved against the corporation, and the power denied.

Application by the people, on relation of Thomas P. Dunn, for writ of mandamus to compel Fred C. Ham, commissioner of public safety of the city of Albany, to reinstate relator in the position of station-house keeper in the police department of the city of Albany.   Writ granted.

James J. Farren, for relator.
Arthur L. Andrews, Corp. Counsel, for defendant.

BETTS, J.   This is an application for a writ of mandamus to compel the defendant to reinstate the relator, Thomas P. Dunn, in the position of station-house keeper in the police department of the city of Albany.   Thomas P. Dunn was appointed said station-house keeper July 1, 1892, by the then board of police commissioners of the city of Albany.   He duly qualified, and entered upon the discharge of his duties, and held such position until the 1st day of June, 1900.   He was then removed by the defendant.   It is contended on the part of the relator that this removal was unauthorized, illegal, and void. The police government of the city of Albany prior to January 1, 1900, was vested in and exercised by a board of police commissioners and by a police force created under the authority of section 2 of title 12 of chapter 77 of the Laws of 1870.   That section is as follows:

"Sec. 2. The powers and duties connected with and incident to the police government of the city of Albany shall be as hereinafter more especially pro-

vided for, vested in, and exercised by a board of police commissioners, and by a police force composed of a chief of police, captains of police, sergeants of police, patrolmen of police, station house keepers, and one surgeon of police."

Section 6 of said title is as follows:

"Sec. 6. The said police board hereby created shall have exclusive power to appoint one chief of police, not to exceed seven captains of police, not to exceed twelve sergeants of police, patrolmen not to exceed one hundred in number, five station house keepers, supernumerary patrolmen not to exceed twenty in number, and one surgeon as hereby established; and also have power to appoint not more than two clerks."

Thus it will be seen that by section 2 the position of station-house keepers was created as a part of the police force, and by section 6 of that statute the police board were authorized to appoint not to exceed five station-house keepers. It was under the authority of that act that Thomas P. Dunn, the relator herein, was appointed. This continued to be the organic law of the police department of the city of Albany until January 1, 1900, when what is known as the "Charter of Cities of the Second Class," being chapter 182 of the Laws of 1898, and the amendments thereto, went into effect. Section 177 of said statute is as follows:

"Sec. 177. The police force, shall, as to its components parts, remain in each city as now constituted until the same shall be changed by the action of the common council thereof, which has power, at all times, by ordinance, to determine the number of members of the police department, and the classes or grades into which they shall be divided, but the number of members of the police department shall not be increased without the approval of the board of estimate and apportionment by a resolution adopted by at least four affirmative votes of said board."

On the 21st of May, 1900, an ordinance was passed by the common council of the city of Albany entitled "An ordinance decreasing the number of members of the police department by abolishing the position of station-house keeper." Section 1 thereof is as follows: "The position in the police force known as station-house keeper is hereby abolished." That ordinance was passed by an affirmative vote of 11 of the 19 members of said common council. It was approved by the mayor of the city of Albany May 31, 1900, and by its terms was to take effect immediately. The commissioner of public safety justifies the removal of the relator under that ordinance. The relator claims that the common council had no power to pass such an ordinance; that the only section of the statute which would give it any such power, or refers to any granted power to said common council concerning the regulation of the number of members of the police department and the classes or grades into which they shall be divided, is section 177 of chapter 182 of the Laws of 1898, hereinbefore quoted, and he quotes further, in support of his claim that he was unlawfully removed or attempted to be removed, sections 184 and 192 of chapter 182 of the Laws of 1898 as amended. Those sections, so far as material, are as follows:

"Sec. 184. If a charge be made by any person against any member of the police force, that he is incompetent, or has been guilty of neglect of duty, misconduct in his office, or of conduct unbecoming a police officer, the charge must be put in writing, in the form required by the rules of the police department, and a copy thereof must be served upon the accused officer. It is then the

duty of the commissioner to hear, try, and determine the charge according to the rules of the police department. The accused officer has the right to be present at his trial, and to be heard in person and by counsel, and give and furnish evidence in his defense. * * * If the accused officer shall be found guilty of the charge made against him the commissioner may * * * dismiss him from the police force, or subject him to any other discipline prescribed in the rules of the police department which is not inconsistent with the provisions of this act or with other laws of the state. The decision of the commissoner shall be final and conclusive and not subject to review by any court."

"Sec. 192. All officers and members of the police department, when this act takes effect, shall remain and continue in their respective positions until their positions shall become vacant by death, resignation or by removal under procedure hereinbefore set forth."

It is thus seen by the sections quoted that the relator was continued by the charter of the cities of the second class in office until his attempted removal by virtue of the action of the common council. He had no trial, and no charges were preferred. In my opinion, the question here depends entirely upon the construction to be given to section 177, hereinbefore quoted. Did the legislature, by giving the common council of the city of Albany the power by ordinance to determine the number of members of the police department, give it the power to abolish a department or division of the force fixed by the statute of 1870, and not repealed by subsequent legislation? The word "determine," when used in this connection, is defined to mean "to fix or settle definitely; make specific or certain; decide the state or character of" (Cent. Dict.); "to fix the form or character of; to shape; to prescribe imperatively; to regulate; to settle; to decide" (Webst. Dict.). I am of the opinion that the word "determine" cannot be given the meaning "to abolish," and that the legislature, by giving the power to the common council to determine the number of members of the police department, did not give it the power to abolish station-house keepers. If that power has been granted by the legislature, then the common council of the city of Albany may abolish and discharge all the captains of police, sergeants of police, patrolmen of police, and the surgeon of police, and the city of Albany be left without a police force of any kind. It is not reasonable to suppose that the legislature intended to give any such authority to the common council of the cities of the second class. The powers of municipal corporations are fairly defined by Judge Dillon in his work on Municipal Corporations as follows:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void." Dill. Mun. Corp. (4th Ed.) § 89. "Since all the powers of a corporation are derived from the law and its charter, it is evident that no ordinance or by-law of a corporation can enlarge, diminish, or vary its power." Id. § 317. "In this country the courts have often affirmed the general inci-

dental power of municipal corporations to make ordinances, but have always declared that ordinances passed in virtue of the implied power must be reasonable, consonant with the general powers and purposes of the corporation, and not inconsistent with the laws or policy of the state." Id. § 319.

By section 203 of the same chapter the legislature did by express words give the power to the common council, in regard to the fire department, to abolish any office, or diminish the number of members. The language there is clear, and might very easily have been employed by the legislature in reference to the police department, if they had so intended. As we have seen, "any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied." I am of the opinion that the common council of the city of Albany was without authority to pass an ordinance abolishing station-house keepers, and its action was, therefore, void. No other support or authority is claimed for the action of the commissioner of public safety except that derived from this ordinance. Mandamus is relator's proper remedy. People v. French, 102 N. Y. 583, 7 N. E. 913; People v. Manning (Sup.) 16 N. Y. Supp. 604.

Application for writ of mandamus granted, with costs.