(September 4, 1906.)

FRANK W. HUNT, Appellant, v. THE CAPITAL STATE BANK (a Corporation), Respondent. S. C. GODLOVE and S. A. HINDMAN, Interveners.

[87 Pac. 1129.]

ESCROW AGREEMENT FOR THE PURCHASE OF A MINING CLAIM—PAYMENT OF PURCHASE PRICE—EXPENSE OF PROCURING PATENT.

1. Where H. enters into an agreement with H. and G., whereby it is agreed that H. will pay $7,100 for a certain mining claim, and pays in cash $100 thereof, and agrees that the balance shall be

due February 3, 1905, and that H. will pay the expense for procuring a patent to said mining claim, and that time is of the essence of the contract, and that thereafter, on February 3, 1905, H. deposited the $7,100 with the bank, as provided by the escrow agreement, with instructions to hold the same until the receiver's receipt for the patent of the mining claim has been issued, and thereafter the receiver's receipt is procured and filed with said bank by H. and G.  *Held*, that the bank was justified in paying the money over to H. and G. after said receipt was so procured.

2. Where several writings constitute one contract, such writings must be construed together.

(Syllabus by the court.)

APPEAL from the District Court of the Third Judicial District for Ada County.  Hon. George H. Stewart, Judge.

Action to recover money paid on an escrow agreement. Judgment for the respondents.  *Affirmed.*

A. A. Fraser, for Appellant.

A proposal to accept, or an acceptance based upon terms varying from those offered, is a rejection of the offer.  (*Bank v. Hall,* 101 U. S. 51, 25 L. ed. 822; *Tilley v. County of Cook,* 103 U. S. 161, 26 L. ed. 374.)

There must be strict compliance with the terms of the option in order to perfect the rights of the one holding it to enforce the contract.  (*Harding v. Gibbs,* 125 Ill. 85, 8 Am. St. Rep. 345, 17 N. E. 60.)

The acceptance must be on the terms and within the time specified.  (*Weaver v. Burr,* 31 W. Va. 736, 8 S. E. 743, 3 L. R. A. 94; *Schields v. Horbach,* 30 Neb. 536, 46 N. W. 629.)

A limitation of time for which a standing offer is to run is equivalent to the withdrawal of the offer at the end of the time named.  (*Longworth v. Mitchell,* 26 Ohio St. 334.)

There was no acceptance of the second proposition varying the terms of the option made by the plaintiff, by Godlove and Hindman, as required by sections 6007, 6009, Revised Statutes.  (*Niles v. Hancock,* 140 Cal. 157, 73 Pac. 842; *New-*

*lin v. Hoyt*, 91 Minn. 409, 98 N. W. 323; *Platt v. Butcher*, 112 Cal. 634, 44 Pac. 1060.)

There was no consideration for the extension of time of the original option, and if there was an attempted extension of said option, it was void for failure of consideration, and not being in writing. (*Ide v. Leiser*, 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695.)

Ira E. Barber, for Respondent.

The statute of frauds does not apply where a case has been performed in whole or in part. This court has frequently so declared. (*Deeds v. Stephens*, 8 Idaho, 514, 69 Pac. 534; *Barton.v. Dunlap*, 8 Idaho, 82, 66 Pac. 832; *Francis v. Green*, 7 Idaho, 668, 65 Pac. 362.)

A unilateral writing, in the way of an offer, in case of performance becomes bilateral when the other party proceeds with performance and cannot be withdrawn. (*Los Angeles Traction Co. v. Wilshire*, 135 Cal. 654, 67 Pac. 1086; *Thurber v. Meeves*, 119 Cal. 35, 50 Pac. 1063, 51 Pac. 536; *Beckwith v. Talbott*, 95 U. S. 289, 24 L. ed. 496.)

If such offer contemplates or permits acceptance of acts instead of a specific acceptance by words, such form of acceptance eliminates want of mutuality. (3 Page on Contracts, 1616; *Storm v. United States*, 94 U. S. 76, 24 L. ed. 42; *Welch v. Whelphley*, 62 Mich. 15, 4 Am. St. Rep. 810, 28 N. W. 744.)

Want of mutuality is no defense, even in action of specific performance, where the party not bound thereby has performed all the conditions of the contract and brought himself clearly within its terms. (*Bigler v. Baker*, 40 Neb. 325, 58 N. W. 1026, 24 L. R. A. 255. Quoted in *Rank v. Garvey*, 66 Neb. 767, 92 N. W. 1025, 99 N. W. 666.)

The contract was executory, and became mutual and binding the instant interveners proceeded with their efforts to procure receiver's receipt, and as an offer to purchase, could not then be withdrawn. (*Bowman v. Ayers*, 2 Idaho, 465,

21 Pac. 405; *McCallister v. Safely,* 65 Iowa, 719, 23 N. W. 139.)

The writing of February 3, 1905, deposited with the escrow holder became, upon acceptance of its conditions, merged into the contract between the parties, and the contract as thus merged and modified must be construed as a whole. (*Utley v. Donaldson,* 94 U. S. 29, 24 L. ed. 54; *Crane v. Kildorff,* 91 Ill. 567; *Brush-Swan etc. Co. v. Brush etc. Co.,* 41 Fed. 163; *Halsell v. Renfrow,* 14 Okla. 674, 78 Pac. 121; *Beckwith v. Talbott,* 95 U. S. 289, 24 L. ed. 496; *Ryan v. United States,* 136 U. S. 68, 34 L. ed. 447, 10 Sup. Ct. Rep. 913; *Bibb v. Allen,* 149 U. S. 481, 37 L. ed. 819, 13 Sup. Ct. Rep. 950; 2 Page on Contracts, 1116.)

The time for performance of a contract under seal may be extended by a subsequent oral contract. (3 Page on Contracts, 1905 ed., 1345; *McCreery v. Day,* 119 N. Y. 1-7, 16 Am. St. Rep. 793, 23 N. E. 198, 6 L. R. A. 503.)

The payment of the money to the trustee to the use and benefit of the interveners was an affirmance of the escrow agreement and option, and was paid for the manifest purpose of claiming on behalf of plaintiff all the benefits of the contract, was a waiver of nonperformance on part of grantors, if any, as to patenting, and an extension of time in which to patent. (*Buckeye M. & M. Co. v. Carlson,* 16 Colo. App. 446, 66 Pac. 168; *Flannery v. Rohermeyer,* 46 Conn. 558, 33 Am. Rep. 36; *Mehen v. Williams,* 2 Daly, 367.)

'In this case the plaintiff made an election to pay on the day. This amounts to waiver and creates an estoppel as against him. (3 Elliott on Evidence, 2073; *Lee v. Templeton,* 73 Ind. 315; *Steinbach v. Relief Ins. Co.,* 77 N. Y. 498, 33 Am. Rep. 655; *Scholey v. Rew,* 23 Wall. (U. S.) 331, 23 L. ed. 99.)

Where there is a mutual modification of the contract, and one party concludes thereafter to stand on the letter of the contract, he must notify the other party. (*Eaves v. Cherokee Iron Co.,* 73 Ga. 459; *Watkinson v. Elsworth,* 27 Conn. 209.)

Consent on the part of the interveners to allow the money

to remain in the hands of the escrow holder, pending the issuance of receiver's receipt, was no waiver of their rights to it. (*Colorado S. L. & M. Co. v. Ponick,* 16 Colo. App. 478, 66 Pac. 458.)

Johnson & Johnson, for Interveners.

Performance or part performance takes a contract out of the statute of frauds. (Rev. Stats., sec. 6008; *Bates v. Babcock,* 95 Cal. 488, 29 Am. St. Rep. 133, 30 Pac. 605, 16 L. R. A. 745; *Ryan v. Tomlinson,* 39 Cal. 639; *McCarthy v. Pope,* 52 Cal. 561; *Coffin v. Bradbury,* 3 Idaho, 778, 95 Am. St. Rep. 37, 35 Pac. 715; *Reedy v. Smith,* 42 Cal. 250.)

The objection of want of mutuality in a contract is not available where both parties act upon the contract. (*Bloom v. Hazzard,* 104 Cal. 312, 37 Pac. 1037; *Bayne v. Wiggins,* 139 U. S. 215, 35 L. ed. 144, 11 Sup. Ct. Rep. 521; *Ryan v. United States,* 136 U. S. 68, 34 L. ed. 447, 10 Sup. Ct. Rep. 913.)

SULLIVAN, J.—This action was brought by the appellant to recover from the defendant bank $7,000, together with interest thereon, the principal sum of which had been deposited in the said bank for the benefit and use of the interveners, upon an agreement or option for the purchase of the Buffalo quartz mining claim, situated in the Thunder Mountain mining district, Idaho county.

On the third day of November, 1904, the appellant and the interveners entered into the following agreement:

"Warrens, Idaho, November 3, 1904.

In consideration of one hundred dollars, the receipt of which is hereby acknowledged, we, the undersigned, owners of the Buffalo Quartz Mining Claim, situated on Thunder Mountain, Idaho County, Idaho, hereby agree to sell said claim to F. W. Hunt of Boise, Idaho, for a price of seven thousand ($7,000.00) dollars, to be paid to our order at the Capital State Bank, at Boise, Idaho, on or before the 3rd

day of February, 1905, and that we will execute and deliver deeds for said property at the said bank to said F. W. Hunt, and will agree that the title to said property shall be good, and will proceed without delay to the survey and patent of said Buffalo claim, the said F. W. Hunt or assigns to pay the costs of patenting excepting the preliminary survey.

(Signed)    S. A. HINDMAN,
S. C. GODLOVE."

Thereafter, on the second day of December, 1904, a deed to said mining claim was placed in escrow with the defendant bank, to be held and to be delivered to the appellant according to the following instructions, deposited with the bank at the time of depositing said deed, to wit:

"Placed in escrow in the hands of the Capital State Bank to be delivered to F. W. Hunt, if he shall make all the payments as below specified; otherwise, to be subject to the order of S. C. Godlove and S. A. Hindman of Warrens, Idaho.

"AGREEMENT.

Consideration ...............................$7,100.00
Cash paid ...................................  100.00
Due Feb. 3d, 1905.............................$7,000.00
Due Feb. 3, 1905, expense incurred in procuring patent.

"There will be no obligation on the part of S. C. Godlove and S. A. Hindman to deliver above-described deed unless payments are made as above, time being the essence of the agreement."

On the third day of February, 1905, appellant paid into said bank $7,000 to the credit of the interveners, and at the same time delivered to the bank the following writing, to wit:

"Agreement dated November 3, 1904, between S. C. Godlove, S. A. Hindman to F. W. Hunt. Filed at request of F. W. Hunt, February 3, 1905, to accompany escrow agreement between above parties dated December 2, 1904. To the Capital State Bank of Idaho, Ltd. Payment of $7,000.00 being made this 3d day of February, 1905, to S. C. Godlove and S. A. Hindman by F. W. Hunt, in accordance with the terms

of said escrow agreement and said agreement of November 3d, 1904, you are hereby instructed to hold said amount until Receiver's receipt in application for patent of said Buffalo claim has been issued.                     F. W. HUNT.''

Thereafter the interveners proceeded with their application for a patent, and on the twenty-first day of October, 1905, the intervener Hindman presented the receiver's final receipt for the sum of $105, that being in full payment for the area of land embraced in said Buffalo lode mining claim.

On the twenty-seventh day of October, 1905, the appellant delivered to the bank the following notice in writing:

"Boise, Idaho, October 27th, 1905.
The Capital State Bank, Boise, Idaho:

Gentlemen—I hereby notify you not to deliver or pay over to Godlove & Hindman, or either of them, or their assigns, the seven thousand dollars which you hold in escrow for the purchase of the Buffalo Quartz Claim in Thunder Mountain Mining District, Idaho County, State of Idaho, as the terms of their contract with me were not carried out.

Very respectfully,
F. W. HUNT.''

It appears from the testimony of the appellant, who testified at the trial of the case, that if he failed to make the payment of $7,000 on the 3d of February, 1905, the option of purchase expired; that he saw one of the interveners about getting an extension for the payment of that sum, and was informed that the affair was entirely in the other intervener's hands, and whatever he did in regard to the matter would be satisfactory to him; that he failed to get an extension of time; that the option would expire on the 3d of February if the payment was not made, having failed to get an extension of time. The appellant then testified as follows: "I went to the bank on the 3d of February and I paid this $7,000. At that time the proceedings toward procuring a patent had not been completed. That was the reason that I asked for an extension of time. When I first got the option, we talked over

the patent proceedings, and Mr. Hindman told me he was going right into Roosevelt to make the preliminary survey of the 'Buffalo,' and that it would take him only a few days. That he would come right out with his application for patent; it would be well under way and perhaps completed by the third day of February, 1905. . . . . . I knew this proceeding had not been completed at this time.''

It is apparent from the testimony in the record that the proceedings for a patent were not completed as early as the parties had anticipated, and that the appellant desired the bank to hold the money until the final receiver's receipt was issued for the land included in the Buffalo lode claim, thus making sure of a perfect title thereto. Apparently, the interveners were satisfied to leave the money in the hands of the bank, as requested by the appellant. They thereafter procured said final receipt and deposited it with the bank, and the bank thereafter turned them over the $7,000.

There is some conflict in the testimony of the appellant and of the cashier of the bank as to conversations had between them. The trial court evidently concluded to accept the evidence of the cashier as true, and made findings of fact, conclusions of law and entered judgment in favor of the bank and the interveners. There appears to be a substantial conflict in the evidence, and where that appears, the appellate court will not disturb the judgment of a trial court.

The main contention of counsel for appellant is, that said option expired on the third day of February, 1905, as the payment of the said $7,000 on that day was not an absolute payment. From all of the evidence in the case, it is clear to us that it was an absolute payment of the $7,000. The intervener, Hindman, testified on the trial that he received a letter from the appellant, in which the appellant notified him that he had made payment on the third day of February, 1905. The appellant testified that the expense of procuring the patent was not paid by him at the time of paying the $7,000 because the expense for procuring the patent was not known at that time. He also testified that he told the cashier of the bank at the time he paid the $7,000 that after the re-

ceiver's receipt for the Buffalo claim was obtained, he, the cashier, could pay it to Godlove and Hindman. That being true, the bank was fully justified in paying said $7,000 over to the interveners, after the receiver's receipt was presented to its cashier.

It appears from the testimony that one of the interveners had a conversation with the appellant on the 19th of October, 1905, in which the former informed the appellant that he had received the final receiver's receipt, and at that time showed the same to the appellant, with an itemized account of the expenses or cost of procuring the patent; that the appellant looked them over and passed them back to the intervener and said, "It seems as though everything is all right." That at that time the appellant informed the intervener that he was going away and would like it if the interveners did not make a demand on the bank for the money before he returned; that the appellant also said that it took so much time to get the receiver's receipt that he thought there ought to be some concession made to him, but did not say just what he wanted. The intervener saw the appellant again on the following Monday or Tuesday, and told him that he wanted to go down to the bank and straighten the matter up; that appellant informed him that he would like to have a discount of ten per cent and the cost of the patent remitted; and the intervener replied that they had fulfilled their contract and were entitled to their money without any discount or concession of any kind. Thereafter he had another conversation with the appellant, and appellant offered to straighten the thing up and release the money in the bank if he would give him $100 and the cost of the patent, and the intervener replied "that he could do that."

The cashier of the bank testified as a witness on behalf of the appellant, and testified that the final receiver's receipt was filed and deposited with him on the 21st or 22d of October, 1905, when one of the interveners came to the bank and produced the final receiver's receipt, and asked for a completion of the agreement in accordance with the escrow agreement. The cashier replied that "he would rather see the ap-

pellant, and for them to come in together''; and shortly there-
after he saw the appellant and informed him that said inter-
vener was in the city, and had presented the receiver's
receipt; that the cashier went and got the papers and said
to the appellant that, ''under the circumstances, he saw noth-
ing to do but to comply with the agreement and pay the
money''; that appellant agreed with him; that appellant said
to the cashier, ''that if the envelope (on which was written
the escrow agreement) could just be lost some way, that might
afford some relief''; that in a conversation with appellant
he expressed a desire to get some allowance made on the part
of the intervener, in the nature of a concession, and he had
about twelve conversations with appellant during a term of
about two weeks in regard to the matter, and clearly indi-
cated a desire to get some concessions from the interveners
and requested the cashier to defer the matter along from day
to day; and the cashier did so, hoping that the matter would
be amicably adjusted; that he thereafter submitted the mat-
ter to his attorney, who investigated the matter, and advised
him to pay the money over to the interveners, and the money
was paid over.   The witness further testified that he knew
that appellant was trying to get some concessions for the in-
terveners, but when he found the money had been paid in
accordance with the instructions, about the first remark he
made to the cashier was as follows: ''I could have had some-
thing over $200.''   Thus intimating that he could have pro-
cured some concessions, if the payment had not been made
at that time.

It is clear to me, from the foregoing, that the appellant
considered the transaction closed and was endeavoring to
get some concessions.   It is contended by counsel for the ap-
pellant that the payment of the money on February 3d, with
instructions not to pay it over until the receiver's final re-
ceipt was filed with the bank, was a change in the escrow.
Conceding, for the sake of argument, that that was so, the
consent of the interveners to allow the money to remain in
the hands of the escrow holder, pending the issuance of the
receiver's receipt, was no waiver of their rights.   However,

as we view it, the money was absolutely paid on the third day of February, 1905. The writing of February 3d deposited in escrow became, upon acceptance of its conditions by the interveners, merged in the contracts between the parties, and the contracts thus merged and modified must be construed as a whole. (*Utley v. Donaldson,* 94 U. S. 29, 24 L. ed. 54.) All the writings connected with this transaction may be construed together as one contract. It is clear that the interveners consented to leave the money on deposit until the receiver's receipt was finally obtained. And thereafter said receipt was obtained and the money paid. The consent of the interveners to not withdraw the money until the receiver's receipt was obtained amounted to a contract between the parties that the sale was completed, and that the costs of procuring the patent would be paid when the amount was ascertained. The interveners fully carried out their part of the contract, and the appellant carried out his to the extent of paying the $7,000, and was bound to pay the cost of procuring the patent when that amount was ascertained. The object of appellant in wanting the money to remain in the bank until the receiver's final receipt was obtained is apparent, and when such receipt was received, it is apparent that the appellant desired to get some concessions from the interveners. It was for that purpose that the appellant asked the bank to delay payment from day to day.

I think, under the facts of this case, the interveners are entitled to recover from the appellant the cost of procuring the patent to said mining claim. The judgment, therefore, must be affirmed, and it is so ordered, with costs in favor of the respondents.

Stockslager, C. J., and Ailshie, J., concur.

ON REHEARING.

(January 5, 1907.)

3. Where, under an agreement for purchase of a mining claim, H. agreed to pay the cost of procuring a patent to said mining claim, and H. and G. proceeded and procured the patent, and accepted

Opinion of the Court—Ailshie, J., on Rehearing.

the purchase price from the escrow holder, and declined to return the same to H. on his taking the position that they had not fulfilled their agreement. *Held*, that H. was entitled to his deed from the grantors and legally relieved from the payment of any further sum.

(Syllabus by the court.)

AILSHIE, J.—A rehearing was granted in this case on the question of the liability of appellant Hunt to pay the sum of $439.65, the expenses incurred by the interveners in patenting the mining claims over which this litigation arose. After hearing the case reargued, and a further consideration thereof, we are satisfied that the original opinion should be modified to the extent of holding that the appellant is not liable for this expense of patent proceedings. Conceding that the agreement of February 3, 1905, was continued in force, we are still confronted with this proposition: Under the original contract the $7,000, and also the expense of procuring a patent, was made payable at the same time and place; namely, at the Capital State Bank, Boise, Idaho, on February 3, 1905. Time was made the essence of the agreement. The payment of the $7,000 was not a full payment of the sum due on February 3d, or upon the date to which that payment was extended. On the other hand, a receipt and acceptance by the grantors of the amount paid, and their refusal to return or surrender the same, entitled the appellant Hunt to the deed, and legally relieved him from the payment of any further sum. The interveners had the right to reject the payment until the same was made in full, including both the $7,000 and the expense of patent proceedings. Under the conditions and circumstances surrounding this transaction, we do not think the grantors could accept a partial payment of a sum that it had been agreed should be paid at a given time and place, and still withhold the deed and compel the grantee to pay the balance before receiving the deed. It would be otherwise if these sums constituted separate installments or had been payable at different times. In that case the grantors might receive and accept one payment, and upon failure of the grantee to make any subsequent payment according to the terms of the escrow, declare the forfeiture

provided by the agreement and still retain the deed. The former opinion of this court will be modified as above indicated, and the cause is hereby remanded to the trial court, with direction that the original decree entered herein be modified in accordance with the views herein expressed, to the effect that the interveners, Godlove and Hindman, be allowed to retain the money deposited by appellant with the respondent bank, and by the bank paid to them, and that the deed for the mining property mentioned and described be delivered to appellant, and that no judgment be entered against appellant for or on account of expenses incurred in procuring patent.

Appellant and interveners will each pay their own costs incurred on this appeal and the respondent bank's costs will be divided equally between appellant and interveners.

Stockslager, C. J., and Sullivan, J., concur.