(February 13, 1922.)

HENRY J. McCONNON, Appellant, v. WALTER N. HOLDEN and MARY HOLDEN, His Wife, Respondents.

[204 Pac. 656.]

SALES—ILLEGALITY OF.

1. If a contract of sale is entire and not separable, and any of its elements or ingredients are tainted with illegality, the plaintiff relying on such contract cannot recover; but to have that result the illegality must enter into and become a component part of the contract, or the seller must actively participate in the illegal purpose.

2. In an action based upon a contract of sale, a defense to the effect that the contract is illegal, and on account thereof void, does not present any matter of private right which calls for protection or enforcement by the court.

3. The principle underlying the denial of recovery by one who relies upon a contract void for illegality is that it is against the public policy of the state for the court to lend its aid to one who founds his cause of action upon an immoral or illegal act.

APPEAL from the District Court of the Fourth Judicial District, for Minidoka County. Hon. Wm. A. Babcock, Judge.

Action to foreclose mortgage. Judgment for defendants. *Reversed.*

Cecil M. Adams, and Homer C. Mills, for Appellant.

This contract is one of sale and not agency, and statements of defendant as to his own status as an agent are inadmissible. (*Watkins Medical Co. v. Holloway*, 182 Mo. App. 140, 168 S. W. 290; *McConnon & Co. v. McCormick* (Tex. Civ.), 179 S. W. 275; *McConnon & Co. v. Haskins* (Mo. App.), 180 S. W. 21; *Saginaw Medicine Co. v. Batey*, 179 Mich. 651, 146 N. W. 329; *Dr. Koch Vegetable Tea Co. v. Malone* (Tex. Civ.), 163 S. W. 662; *W. T. Rawleigh Co. v. Van Duyn*, 32 Ida. 767, 188 Pac. 945; *W. T. Rawleigh Medical Co. v. Rose*, 133 Ark. 505, 202 S. W. 849.)

The sending of printed matter to purchaser to assist in advertising goods, or price list, or requirement of reports or records of sale by company from salesman, or provision allowing salesmen to return goods to company, or designation of salesman's territory, or suggestions and advice to wagonmen by the company concerning the sale of goods, does not alter character of contract nor tend to establish the relation of agency between them. (*Ross v. Northrup, King & Co.*, 156 Wis. 327, 144 N. W. 1124; *Sucker State Drill Co. v. Wirtz*, 17 N. D. 313, 115 N. W. 844, 18 L. R. A., N. S., 134; *Rich v. Chicago etc. Ry. Co.*, 34 Wash. 14, 74 Pac. 1008; *Arbuckle v. Kirkpatrick*, 98 Tenn. 221, 60 Am. St. 854, 39

S. W. 3, 36 L. R. A. 285; *Granite Roofing Co. v. Casler,*
82 Mich. 466, 46 N. W. 728; *W. T. Rawleigh Medical Co. v.
Van Winkle,* 67 Ind. App. 24, 118 N. E. 834.)

There is no provision in the statutes denying the right
to recover the debt contracted between McConnon & Com-
pany and Holden. (21 R. C. L., sec. 72, p. 558; *Vermont
Loan & Trust Co. v. Hoffman,* 5 Ida. 376, 95 Am. St. 186,
49 Pac. 314, 37 L. R. A. 509; *Wood v. Krepps,* 168 Cal. 382,
143 Pac. 691, L. R. A. 1915B, 851; *McCall Co. v. Hughes,*
102 Miss. 375, 59 So. 794, 42 L. R. A., N. S., 63; *Mandle-
baum v. Gregovich,* 17 Nev. 87, 45 Am. Rep. 433, 28 Pac.
121; *Hughes v. Snell,* 28 Okl. 828, Ann. Cas. 1912D, 374,
115 Pac. 1105, 34 L. R. A., N. S., 1133; *Banks v. McCosker,*
82 Md. 518, 51 Am. St. 478, 34 Atl. 539; *Robbins v. Taxing
District of Shelby County,* 120 U. S. 489, 7 Sup. Ct. 592,
30 L. ed. 694.)

The giving of the note and mortgage by Holden and his
wife in payment of the book account, even though such book
account was founded on an illegal consideration, is a suffi-
cient consideration for the note and mortgage, and the
defendants are estopped from setting up a lack of consid-
eration or its illegality. (*Oakdale Mfg. Co. v. Garst,* 18
R. I. 484, 49 Am. St. 784, 28 Atl. 973, 23 L. R. A. 639;
*McCall Co. v. Hughes, supra; Koons v. Vauconsant,* 129
Mich. 260, 95 Am. St. 438, 88 N. W. 630; *Smith v. Smith,*
4 Ida. 1, 35 Pac. 697; *Fidelity State Bank v. Miller,* 29
Ida. 777, 162 Pac. 244; *First National Bank v. Harkey,* 63
Okl. 163, 163 Pac. 273.)

W. W. Mattinson, for Respondents.

Secs. 2353–2359, C. S., is a police measure, enacted to pro-
tect public from fraud, and to prohibit peddling except
in compliance with those sections. Contracts or sales made
in violation thereof are void; notes and securities given to
secure payment of price of goods sold in violation of the
statute likewise are void and unenforceable. (17 R. C. L.
560; 3 R. C. L. 963; Benjamin on Sales, 521; *Vermont Loan*

*etc. Co. v. Hoffman,* 5 Ida. 376, 95 Am. St. 186, 49 Pac. 314, 37 L. R. A. 509; *Levinson v: Boas,* 150 Cal. 185, 11 Ann. Cas. 661, 88 Pac. 825, 12 L. R. A., N. S., 575; *Wood v. Krepps,* 168 Cal. 382, 143 Pac. 691, L. R. A. 1915B, 851; *Mandlebaum v. Gregovich,* 17 Nev. 87, 45 Am. Rep. 433, 28 Pac. 121; *Banks v. McCosker,* 82 Md. 518, 51 Am. St. 478, 34 Atl. 539; *Smith v. Bach,* 183 Cal. 259, 191 Pac. 14; *Rash v. Farley,* 91 Ky. 344, 34 Am. St. 233, 15 S. W. 862; 8 C. J. 244; 13 C. J. 510; *Martin v. Steele,* 7 Ida. 497, 63 Pac. 1040; *Baker v. Lehman etc. Co.,* 186 Ala. 493, 65 So. 321; *Mo Yaen v. State,* 18 Ariz. 491, 163 Pac. 135, L. R. A. 1917D, 1014; *Leonard v. Poole,* 114 N. Y. 371, 11 Am. St. 667, 21 N. E. 707, 4 L. R. A. 728.)

Where it is intended by the parties that the subject matter of the sale is to be taken into the jurisdiction of the forum and there sold in violation of the laws of the latter state, and the seller aids in the furtherance of such illegal purpose, the courts of the latter state will not permit an action to be maintained thereon. (23 R. C. L. 1316, 1320; *Gaylord v. Soragen,* 32 Vt. 110, 76 Am. Dec. 154; *Coffe & Clarkener v. Wilhite,* 56 Okl. 394, 156 Pac. 169; *Standard Furniture Co. v. Van Alstine,* 22 Wash. 670, 79 Am. St. 960, 62 Pac. 145, 51 L. R. A. 889; *Arnott v. Pittston & Elmira Coal Co.,* 68 N. Y. 558; 23 Am. Rep. 190; *Graves v. Johnson,* 179 Mass. 53, 88 Am. St. 355, 60 N. E. 383; *Tracy v. Talmage,* 14 N. Y. 162, 67 Am. Dec. 132; *Corbin v. Houlehan,* 100 Me. 246, 61 Atl. 131, 70 L. R. A. 568; *Wasserboehr v. Boulier,* 84 Me. 165, 30 Am. St. 344, 24 Atl. 808; *Smith v. Godfrey,* 28 N. H. 379, 61 Am. Dec. 617.)

Apart from the contract of sale, the evidence establishes the relation of principal and agent between McConnon & Co. and Holden in the resale of McConnon products in Idaho, and this finding of the court sitting as a jury will not be disturbed. (*Clark v. J. R. Watkins Medical Co.,* 115 Ark. 166, 171 S. W. 136; 2 C. J. 438; *Willcox & G. Sewing Mach. Co. v. Ewing,* 141 U. S. 627, 12 Sup. Ct. 94, 35 L. ed. 882; *Sturm v. Boker,* 150 U. S. 312, 14 Sup. Ct. 99, 37 L. ed.

1093; *McKinney v. Grant,* 76 Kan. 779, 93 Pac. 180; *Studebaker Corp. of America v. Hanson,* 24 Wy. 222, Ann. Cas. 1917E, 557, 157 Pac. 582, 160 Pac. 336; *Moline Plow Co. v. Rodgers,* 53 Kan. 743, 42 Am. St. 317, 37 Pac. 111; *Carstens v. Nut House,* 96 Wash. 50, 164 Pac. 770; *Herring-Hall-Marvin Safe Co. v. Balliet,* 38 Nev. 164, 145 Pac. 941; *Cauthorn v. Burley State Bank,* 26 Ida. 532, 144 Pac. 1108; *Blackwell v. Kercheval,* 29 Ida. 473, 160 Pac. 741.)

RICE, C. J.—This is an action to foreclose a mortgage given for the purchase price of certain goods sold to respondent Walter N. Holden, under the following contract:

"This agreement, made the 11th day of March, A. D., 1913, between McConnon & Company, a corporation of Winona, Minnesota, party of the first part, and Walter N. Holden, of Heyburn, in the State of Idaho, party of the second part—

"Witnesseth: That for and in consideration of the promises and agreements hereinafter contained, to be kept and performed by the party of the second part, the party of the first part promises and agrees to sell and deliver to the party of the second part f. o. b. at Winona, Minnesota, in such reasonable quantities as the party of the second part may from time to time require in his territory hereinafter described, all medicines, extracts, and other articles, manufactured or sold by it, such goods to be sold and delivered to the party of the second part at the usual and customary wholesale prices to be shown by invoices accompanying each shipment.

"The party of the second part hereby acknowledges that he is indebted to the party of the first part in the sum of $300 Dollars, the same being part of the balance now due from Peter Verburg to the party of the first part under a certain agreement entered into between him and it on February 8, 1912, and agrees to pay on or before the expiration of this contract in consideration of the execution of this

agreement and the extension of the time of payment of said indebtedness by the party of the first part.

"The party of the second part agrees to sell goods delivered to him under this agreement in the county of Minidoka and in the western one-half of Cassia County, and State of Idaho, or in such other territory as the party of the first part may direct, from the date hereof until the first day of March, 1914, when this agreement shall terminate.

"The party of the second part further agrees to keep a complete record of all goods disposed of in his said territory and on hand, and to make written reports of the same to the party of the first part at such times and in such manner as it may from time to time require, and to pay the party of the first part the wholesale prices f. o. b. Winona, Minnesota, as aforesaid for all goods furnished to him from time to time as hereinbefore provided, at the time and in the manner and in accordance with the provisions of the weekly report blanks of the party of the first part furnished to the party of the second part and further agrees, that at the expiration of this agreement, he will pay to it the whole amount then remaining unpaid, but the time of making such payments or any of them, may be extended by the party of the first part without notice to the guarantors hereon and without prejudice to the interests of said first party.

"In Testimony Whereof, the party of the first part has caused this agreement to be executed in its corporate name by its president and its corporate seal to be hereunto affixed; and the said party of the second part has hereunto set his hand and seal the day and year first above written.

"McCONNON & COMPANY,

"By Henry J. McConnon,

"President.

"WALTER N. HOLDEN,

"Second Party.

" (Seal)    Attest: Joseph R. McConnon, Secretary."

The defense interposed by respondents was to the effect that the note and mortgage was given for the purchase price of certain patent medicines, flavoring extracts, etc., which were sold and delivered to Mr. Holden, acting in the capacity of sales agent, for the purpose and with the understanding that said chattels were to be resold in Minidoka county, Idaho, by him as a peddler without procuring a license as required by the statutes of this state; that appellant encouraged, counseled and advised him to sell such goods and wares as a peddler without procuring a license; that, acting upon the advice of appellant, he purchased said patent medicines and flavoring extracts and sold and offered to sell the same as a peddler without obtaining and procuring a license.

The defendants had judgment in the court below.

The conclusion we have reached renders it unnecessary to decide whether C. S., secs. 2353 to 2359, relating to the licensing of peddlers, were enacted for the protection of the public and therefore avoid contracts made by a peddler who has not complied with the terms thereof.

The principle which prevents recovery upon an illegal contract of sale is stated by Lord Mansfield in the case of *Holman v. Johnson,* 1 Cowp. 341, 98 Eng. Reprint, 1120, as follows:

"The objection, that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this: *ex dolo malo non oritur actio.* No court will lend its aid to a man who founds his cause of action upon an immoral, or an illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appears to arise *ex turpi causa,* or the transgression of a positive law of this country, there the court says he has

35 Idaho—6

no right to be assisted. It is upon that ground the court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So if the plaintiff and defendant were to change sides, and the defendant was to bring his action against the plaintiff, the latter would then have the advantage of it; for where both are equally at fault, *potior est conditio defendentis.*"

See, also, Williston on Sales, p. 1113.

The defense interposed by respondents in this case does not set forth any matter of private right which calls for protection or enforcement by the courts. If the appellant is to be denied recovery it must be on the ground that to permit him to do so would violate the public policy of this state. (See *Cox v. Cameron Lumber Co.*, 39 Wash. 562, 82 Pac. 116.)

It has been held that when a plaintiff can maintain his cause of action without the aid of an illegal act or an illegal agreement, he will be entitled to recover. (*J. R. Watkins Medical Co. v. Hunt*, 104 Neb. 266, 177 N. W. 462; *Re Lowe's Estate*, 104 Neb. 147, 175 N. W. 1015; *McCall Co. v. Hughes*, 102 Miss. 375, 59 So. 794, 42 L. R. A., N. S., 63.)

By the weight of authority, mere knowledge by the vendor of merchandise that the buyer intends to use it unlawfully, unless in the commission of a heinous offense, or intends to dispose of it in violation of law, is not sufficient to vitiate the contract of sale or to defeat a recovery of the purchase price. We cite a few of the numerous cases: *Feineman v. Sachs*, 33 Kan. 621, 52 Am. Rep. 547, 7 Pac. 222; *Graves v. Johnson*, 179 Mass. 53, 88 Am. St. 355, 60 N. E. 383; *Washington Liquor Co. v. Shaw*, 38 Wash. 398, 3 Ann. Cas. 153, 80 Pac. 536; *Hill v. Spear*, 50 N. H. 253, 9 Am. Rep. 205; *Loose v. Larsen*, 40 Nev. 157, 161 Pac. 514, L. R. A. 1917B, 1166; *Wallace v. Lark*, 12 S. C. 576, 32 Am. Rep. 516; *Tracy v. Talmage*, 14 N. Y. 162, 67 Am. Dec. 132.

Since the matter is one of public policy, and not of private right, illegality may be shown by evidence extrinsic to the contract. If the contract be not separable and any

of its elements or ingredients are tainted with illegality, however slight, the plaintiff cannot recover; but the illegality must enter into and become a component part of the contract, or the seller must actively participate in the illegal purpose in order to avoid the contract. (*Hull v. Ruggles,* 56 N. Y. 424; *Aiken v. Blaisdell,* 41 Vt. 655; *Fisher v. Lord,* 63 N. H. 514, 3 Atl. 927, *Waymell v. Reed,* 5 T. R. 599, 101 Eng. Reprint, 335; *Storz v. Finkelstein,* 46 Neb. 577, 65 N. W. 195, 30 L. R. A. 644.)

In the case at bar, the contract was one of sale and not of agency. (The *W. T. Rawleigh Co. v. Van Duyn,* 32 Ida. 767, 188 Pac. 945.)

We have carefully examined the numerous exhibits, and there is no evidence of any subsequent agreement modifying the contract of sale, or of any intention so to do.

The contract of sale contains no provision relating to the manner in which Holden was to sell the products. Upon the face of the contract, it appears to have been a matter of indifference to McConnon & Company whether the goods should be sold by him with or without a license.

It is insisted that McConnon & Company encouraged, aided and abetted Holden in selling the goods as a peddler without a license contrary to law. It is true that some time after the contract set out in this opinion was executed, Holden wrote to McConnon & Company expressing his misgivings as to his right to peddle without a license and as to the consequences which might result if he did so. In answer McConnon & Company, both personally and through its attorney, advised him that the license law was oppressive and probably unconstitutional, and offered to pay the attorney's fee incurred by him in defense of any action in which he might be arrested for violation of the peddler's license law. The goods were sold to Holden f. o. b. cars at Winona, Minnesota. They were his property before they entered the state of Idaho. Even though it may have been understood that he would sell his own goods as a peddler illegally without a license, it does not appear that this circumstance

formed any element of the contract of sale. The company did not do any act, or agree to do any act, to facilitate the illegal sale of the goods by Holden. It merely expressed an opinion as to the character and constitutionality of the license statute, and offered to pay attorney's fees in case Holden should be arrested, but this was aside from and subsequent to the contract of sale.

The judgment will be reversed, with costs to appellant.

McCarthy, Dunn and Lee, JJ., concur.

Budge, J., did not sit at the hearing and took no part in the opinion.