(No. 7083. July 1, 1943.)

I. R. WOODWARD, Appellant, v. ROSS PACKING COMPANY, INC., Respondent.

[139 Pac. (2d) 749.]

Rehearing Denied August 13, 1943.

E. B. Smith for appellant.

Geo. Donart for respondent.

HOLDEN, C.J.—Respondent Ross Packing Company, Inc., at all times hereinafter mentioned was, and still is, engaged in operating a fruit dehydrating plant at Payette, Idaho, and at all times hereinafter mentioned, I. R. Woodward was, and still is, a duly and regularly licensed and practicing physician and surgeon at Payette.

August 28, 1937, Dr. I. R. Woodward, hereinafter called

"claimant," and Ross Packing Company, Inc., hereinafter called "company," executed a properly filled out blank form of "hospital contract," printed for the use of employers and doctors desirous of complying with the requirements of secs. 43-1108, 43-1109, I.C.A., providing for hospital contracts. Later, September 1, 1937, claimant signed and delivered the following instrument to respondent company:

"It is understood and agreed that the undersigned Dr. I. R. Woodward, will waive that part of a certain hospital contract entered into August 28, 1937, by and between Dr. I. R. Woodward and Ross Packing Company in which it is stated on line 49 of said contract (excepting the heading which is not counted as a line) stating 'and fifty per cent, 50% thereof additional on its own account, etc.' and that said Ross Packing Company will not be obligated to pay this extra amount.

"It is further understood and agreed that this is to be a portion and part of the contract and does not waive any other obligation or part to either party not pertaining to this one condition.

(Signed)  Dr. I. R. Woodward."

The hospital contract and the above quoted instrument were delivered by the parties to each other simultaneously, it being expressly agreed, as will have been noticed, "that this (the above quoted waiver) is to be a portion and part of the contract (referring to the hospital contract). Shortly thereafter, September 7, 1937, the above mentioned hospital contract was filed with the Industrial Accident Board for its approval, without disclosing the existence of the above quoted waiver. On that day, without any knowledge or information on the part of the board of the execution of the said waiver, the board approved the paper designated "hospital contract."

The Industrial Accident Board found that by the terms of the so-called hospital contract, claimant agreed to provide to each and every person employed by respondent at Payette, who should elect to receive the benefits of such contract

"all necessary and reasonable medical, surgical and hospital attendance, medicine, nursing, crutches and apparatus for sickness contracted during the employment and for injuries received arising out of and in the course of the employment,

as well as other injuries received during the employment, which written agreement provided that the defendant should pay to the claimant One ($1.00) Dollar per calendar month for each of defendant's employees, to be deducted, withheld and collected from the wages or earnings of each and every of its employees, or if employed less than a calendar month, then the sum of ten (10c) cents a day for each employee employed ten (10) days or less, in any calendar month, and which agreement further provided that the defendant should pay to the claimant an additional amount equal to fifty (50%) per cent of each One ($1.00) dollar so collected on behalf of each such employees, making the effect of said contract to be that defendant should pay to the claimant a total of One and 50/100 ($1.50) dollars for each employee each calendar month for the services to be rendered by said claimant, of which One ($1.00) Dollar per month was to be collected by the defendant from its employees, and fifty (50c) cents per month for each employee paid by the defendant."

The so-called hospital contract executed by claimant and respondent company was terminated February 1, 1940. Thereafter claimant made a demand upon respondent for payment of an unpaid balance claimed to be due him under the contract in the sum of $724.67, being the alleged total claimed to be due from the company on a basis of 50c per month per employee to be paid by the company, not by its employees. September 1, 1942, respondent having failed to pay claimant the amount demanded, claimant filed a petition with the Industrial Accident Board whereby he sought to recover said alleged balance from the company. The matter was heard by the board at Payette, October 2, 1942. November 13, 1942, findings of fact and rulings of law were made and the following order entered thereon:

"WHEREFORE IT IS ORDERED AND THIS DOES ORDER, That the claim for compensation of I. R. Woodward against the defendant, Ross Packing Company, Inc., a corporation be, and the same hereby is denied and his application is dismissed."

November 27, 1942, claimant prosecuted an appeal to this court from the above quoted order.

In the case at bar, as above stated, the paper designated "hospital contract" and the above quoted waiver were connected with and related to the same subject matter and

were delivered by the parties to each other simultaneously, with the express understanding and agreement that the "waiver" was to be and become a part of the contract of the parties.

"Where several writings constitute one contract (as expressly understood and agreed in the instant case), such writings must be construed together." (*Hunt v. Capital State Bank,* 12 Ida. 588, 87 P. 1129; *First Nat. Bank of Idaho v. Reins,* 42 Ida. 720, 725, 248 P. 9; *Stone v. Bradshaw,* 64 Ida. 152, 128 P. (2d) 844, 846; 12 Am. Jur., sec. 246, p. 781.)

Secs. 43-1108 and 43-1109, I.C.A., provide:

"[43-1108.] Hospital Contracts.—Nothing in this act shall be construed as preventing employers and workmen from waiving the provisions of sec. 43-1107 and entering into mutual contracts or agreements providing for hospital benefits and accommodations to be furnished to the employee.

"Such hospital contracts or agreements must provide for medical, hospital and surgical attendance for such employee for sickness contracted during the employment (except venereal diseases and sickness as a result of intoxication), as well as for injuries received arising out of and in the course of the employment.

"No assessment of employee for such hospital contracts or benefits shall exceed one dollar per month for each employee, except in cases where it shall appear to the satisfaction of the board, after a hearing had for that purpose, that the actual cost of such service exceeds the said sum of one dollar per month, and any such finding of the board may be modified at any time when justified by a change of conditions, or otherwise, either upon the board's own motion or the application of any party in interest.

"No profit, directly or indirectly, shall be made by any employer as a result of such hospital contract or assessment. It is the purpose and intent of this act to provide that each and every hospital maintained wholly or in part by payments from workmen, which furnishes treatment and services to employees for sickness and injury, as provided in this act, shall be under the supervision of the board as to services and treatment rendered such employees, and shall, from time to time make reports of such services, attendances,

treatments, receipts and disbursements as the board may require."

"[43-1109.] Hospital Contracts—Bond of Contractor. —Before approving any hospital contract or agreement, the individual corporation or association agreeing to furnish to the employees of any employer of the state of Idaho medical, hospital and surgical attendance provided for in sec. 43-1108, the board may, in its discretion, require such individual, corporation or association to file with the board a surety bond in the penal sum of $5000 conditioned that such individual, corporation or association will faithfully furnish to such employees the medical, hospital and surgical attendance agreed to be furnished in such contract and agreement and required to be furnished by section 43-1108."

Sec. 43-1108, supra, states in detail what hospital contracts must provide for and sec. 43-1109, supra, vests jurisdiction in the Industrial Accident Board to approve all such contracts. This court construed that section in *Western Hosp. Assn. v. Indus. Acc. Board,* 51 Ida. 334, 343, 6 P. (2d) 845, pointing out that:

" 'Approve' is defined as follows: 'to commend; be satisfied with.' (Bouvier's Law Dictionary, 3d Rev. 223.) 'To confirm, ratify, sanction, or consent to some act or thing done by another.' (1 Words & Phrases, 3d ser., 545, citing *Board of Education of City of Hutchinson v. Reno Community High School,* 124 Kan. 175, 257 P. 957, 959.) 'To sanction officially; to ratify; to confirm.' (Words & Phrases, 2d ser., 260, citing *Long v. Needham,* 37 Mont. 408, 96 P. 731, 733.) 'To pronounce good; think or judge well of; admit the propriety or excellence of; be pleased with; commend; and as used in Pol. Code, sec. 17, providing that all contracts made by the state furnishing board must be "approved" by the Governor or State Treasurer, means more than merely ministerial approval. They must exercise judicial discretion.' (1 Words & Phrases, 475, citing *State v. Smith,* 23 Mont. 44, 57 P. 449.) 'To regard or comment upon as worthy of acceptance, commendation or favorable attention; form or express a favorable judgment concerning; treat, receive or present with favor.' (Funk & Wagnall's New Standard Dictionary.)

" 'Determine' is defined: 'To reach a definite purpose concerning; form the intention of doing or not doing; resolve; decide.' (Funk & Wagnall's New Standard Diction-

ary.) 'To fix or settle definitely; make specific or certain; to decide the state or character of; to fix the form or character of; to shape; to prescribe imperatively; to regulate; to settle; to decide.' (3 Words & Phrases, 2038, citing *People v. Ham*, 32 Misc. Rep. 517, 66 N.Y. Supp. 264, 266.)"

The *real* contract entered into between claimant and the company was never presented to nor filed with the Industrial Accident Board for its approval, in that a substantial part (the above quoted waiver) was secretly withheld from the board by the parties thereto; hence, while the paper designated "hospital contract" was filed with and submitted to the board for its approval, and approved, the contract *actually* entered into between claimant and the company was not filed with, nor submitted to the board for its approval, nor approved by the board as contemplated and required by sec. 43-1109, supra.

The statute, of course (sec. 43-1109), contemplates and requires that the true contract made between an employer and a contract doctor shall be filed with and submitted to the board for its approval, modification or rejection. To wilfully submit to the board for its approval anything other than the *true* contract, amounts to practicing deliberate fraud and deception on the board, which this court ought not to either sanction or approve.

Furthermore, claimant, himself, says that:

"Clearly, since a hospital contract must be approved by the board in order that it be rendered valid and binding, then it follows that any addition thereto, subtraction therefrom, alteration or modification, intended by either of the parties to the contract itself (exclusive of the employees) to modify its terms, must likewise be submitted to and be approved by the board in order that it be rendered valid. Otherwise such a modification is void, for by virtue of the expressed public policy of the law, there appears to be no middle ground for strictly private contract."

As above stated, sec. 43-1109, supra, requires the approval of the board of the actual agreement between employer and physician, providing for the hospitalization of employees. In the case at bar there was no approval of the real agreement between employer and physician. Therefore, such agreement, under the statute, could not become effective until approved by the board. Hence, for that reason alone, appellant should not recover.

Moreover, and as hereinbefore pointed out, the statute (sec. 43-1109, supra) requires that employer and contract doctor shall file with and submit to the board for its approval the true contract entered into between them; therefore, the filing with and submission to the board for its approval (in which in the instant case both parties are equally at fault), a paper, not the *true* contract made between the parties, constitutes a violation of the clear intent and purpose of the statute and will, if permitted, open the door to all kinds of fraud and deception; and furthermore, being in violation of the statute and against public policy, and claimant being *in pari delicto*, the law leaves these parties where it finds them. (*A. C. Frost & Co. v. Coeur d'Alene M. Corp.*, 61 Ida. 21, 27, 98 P. (2d) 965; *McFall v. Arkoosh*, 37 Ida. 243, 246, 215 P. 978; *McConnon v. Holden*, 35 Ida. 75, 81, 204 P. 656; *Libby v. Pelham*, 30 Ida. 614, 621, 166 P. 575; 12 Am. Jur., sec. 212, p. 721; ib., sec. 167, p. 662.)

In conclusion: At the bar it was admitted by counsel for the respective parties that secret agreements between employer and contract doctor, like the above quoted waiver, were common in that part of the state from which this controversy comes. It is a most pernicious practice. A practice which should be stopped at the earliest possible moment. The Industrial Accident Board has plenary power in the premises (Sec. 43-1413, I.C.A., as amended, chap. 175, 1937 Sess. L., p. 290). Consequently, we strongly recommend that such board at once promulgate appropriate rules and regulations whereby all employers and physicians shall be required to make an affidavit, as a condition precedent to approval, and annex the same to any and all hospital contracts (as a part thereof) filed with the board, to the effect that there is no outstanding, secret contract, agreement or understanding between any such employer and contract doctor, and that the instrument filed with the board in compliance with and as provided by secs. 43-1108 and 43-1109, supra, is the true and only hospital contract made and existing between the parties. Anyone making a false affidavit would, then, of course, subject himself to prosecution for perjury.

The order appealed from should be affirmed.

Dunlap, J., concurs.

BUDGE, J., dissenting.—The findings of fact of the Industrial Accident Board, Nos. 3 to 5, inclusive, set out the facts in this cause concerning which there is no dispute between the parties. Finding No. 3, inter alia, is substantially as follows, to-wit:

That on or about the 28th day of August, 1937, the parties to this proceeding signed a certain instrument designated as a "hospital contract" in accordance with and as provided by the Workmen's Compensation Law, secs. 43-1108, 43-1109, I.C.A. By the terms of said contract, appellant agreed to provide to each and every person electing to receive the benefits of such hospital contract, all necessary reasonable medical, surgical and hospital attendance, for sickness incurred or injury received arising out of and in the course of employment.

The written contract provided that respondent should pay to appellant $1.00 per calendar month for each of respondent's employees, to be deducted, withheld, and collected from the earnings of each and every of its employees, or if employed less than a calendar month, the sum of 10 cents a day for each employee employed ten days or less in any calendar month, and an additional amount equal to fifty cents per employee per month to be paid by the employer.

The contract above referred to was filed with and approved by the Industrial Accident Board under the provisions of sec. 43-1109, I.C.A., which contract, prior to the institution of the proceedings herein, was fully executed. When the contract above referred to was entered into, to-wit, on September 1, 1937, appellant and respondent entered into another so-called contract, which was not filed with the Industrial Accident Board, was unknown to it and never became a part of said approved hospital contract. The hospital contract, as filed and approved, protected all sick or injured employees. The so-called contract entered into by appellant and respondent could have no bearing and in no way could affect the hospital contract. It amounted to nothing more or less than an agreement between appellant and respondent that appellant would rebate or waive the amount that respondent was required to pay as stipulated in said hospital contract.

What are the questions to be settled under the Workmen's Compensation Act over which the Industrial Accident Board has jurisdiction? The purpose of the act was to abolish the

common law system governing the remedy of workmen against employers for injuries received in industrial and public works for the reason that the common law system in such cases produced the result that little of the costs to the employer reached the injured workman and that little at large expense to the public. The state, in exercising its police and sovereign power, declared "that all phases of the premises are withdrawn from private controversy, and sure and certain relief for injured workmen and their families is hereby provided, regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation * * * and to that end all civil actions and civil causes of action for such personal injuries, and all jurisdiction of the courts of the state over such causes are hereby abolished." (Sec. 43-902, I.C.A.)

Sec. 43-1413, as amended in 1937 S. L., c. 175, p. 290, I.C.A., provides: "All questions arising under this act * * * except as otherwise herein provided, [must] be determined by the board. *The board shall have power to adopt rules of procedure. * * *.*"

The only questions over which the board may exercise jurisdiction involve compensation to be paid to sick or injured workmen engaged in industrial and public work, not private controversies. And as to these matters the state in the exercise of its police powers declared that all phases of the premises were withdrawn from private controversies. (43-902, supra.) It certainly cannot be logically contended that the controversy between appellant and respondent, within the meaning of the Workmen's Compensation Law, involves injuries received by workmen in industrial or public work, or involves the payment of compensation to injured workmen and their families and dependents. Neither does it involve or seek to enforce or govern the remedy of workmen against employers for injuries received in industrial or public works. The agreement between appellant and respondent extended no further than a private controversy over which the board had no jurisdiction, in which no injured workman was affected or in any way concerned. In short, the proceedings before the board amounted to nothing more than a common law action to recover money alleged to be due and owing, over which the board had no jurisdiction.

The Colorado court in *Rocky Mountain Fuel Co. v. Ind. Comm.,* 105 Colo. 220, 96 P. (2d) 413, said:

"The Workmen's Compensation Act deals exclusively with matters growing out of the relation of employer and employe. The provisions of the act are binding upon employers and employes electing to be bound by them, and upon none others. All except employers and employes are strangers to the act and their usual lawful rights and remedies are unaffected by it. [Citing cases.] * * *."

"Out of it all, as we conceive, a controversy exists between the lessor and lessee as to which, if either, is bound to pay for the medical and hospital bills said to be owing to the doctor and hospital serving the claimant. In such situation, 'the parties are relegated to the courts for an ajudication of the matter'."

The Supreme Court of Oklahoma held:

"The State Ind. Commission is an administrative body, authorized and empowered to consider an injury arising out of and in the course of the employment as between the employer and the employee. It has no power to consider and construe contractual rights between the employer or the insurance carrier of the employer and third parties." (*Independent Oil & Gas Co. v. Mooney,* 187 Okla. 472, 103 P. (2d) 577, and cases cited therein.)

In the case of *Spaulding & Osborne v. Pac. Employers Ins. Co.,* et al, ......... Okla. ........., 134 P. (2d) 581, is the following language:

"The State Industrial Commission was created to give speedy relief to injured workmen entitled to compensatory benefits under the Workmen's Compensation Act. * * * The accomplishment of that function would be greatly hampered if by judicial precedent we permitted it to gradually metamorphise under slender pretext into a tribunal where insurance carriers and employers settled their respective contractual rights in conjunction with disputes in which claimants' interests were no longer involved. * * * We are of the opinion and hold that the question herein presented for review involves only a dispute between an employer and an insurance carrier. Shorn of other aspects it is not a proper subject for consideration in this type of proceeding. * * * Any dispute that may exist between the employer and the insurance carrier or the two insurance carriers as to their contractual rights or as to contribution or exoneration may be adjudicated in a court of competent original jurisdiction."

Appellant avers that the case of *Arneson v. Robinson*, 59 Ida. 223, 240, 28 P. (2d) 249, settled the question of the board's jurisdiction over hospital contracts. In that case, a workman, having been refused medical or surgical assistance by the contract doctor, secured medical and surgical treatment and hospitalization from another doctor, and the board granted reimbursement therefor. This court held that the board had jurisdiction to grant such reimbursement. A careful study of that case reveals that an injured workman was involved and his interest was paramount. In the instant case, no injured workman, his family or dependents are involved or in any way affected. The board's jurisdiction extends no further than to the payment of compensation to sick or injured workmen, their families or dependents, and to matters necessary to be determined in order to award full compensation. When it appeared to the board that the dispute herein was between appellant and respondent and not between an employer and employee arising out of the hospital contract, but was a civil action not involving compensation to be paid to an injured workman, his family or dependents, its powers and jurisdiction as an investigating administrative board on all questions arising under the Workmen's Compensation Act terminated. The board neither had jurisdiction over the parties or the subject matter, nor jurisdiction to enter any judgment or award. The board having no jurisdiction, this court likewise has no jurisdiction.

The cause should be remanded to the board with instructions to dismiss the proceeding for lack of jurisdiction.

AILSHIE, J.— █ In this case, it appears that all the justices, except Justice Budge, hold that the Industrial Accident Board had jurisdiction of the question presented. On the other hand, Justice Budge holds that the board was without jurisdiction and for that reason properly entered its order denying compensation.

█ The chief justice and Justice Dunlap hold that the board had jurisdiction and that its order was within the evidence and should be affirmed. Consequently, three members of the court (Chief Justice Holden, Justices Budge and Dunlap) conclude, though for different reasons, that the order should be affirmed.

On the other hand, Justice Givens and I believe that the

board had jurisdiction and that its order should be reversed, for the reason that a proper contract was prepared by the employer and the doctor and submitted to the board and approved, and that it should be enforced. I personally believe that the employer is and should be estopped from asserting or introducing evidence to show, that he had a secret contract made in violation of the statute.

As a result from the foregoing reasons and vote of the justices, the order of dismissal is affirmed. Costs to respondent.