56 P.3d 765

**Ronald TREES and Pam Trees, husband and wife, d/b/a United Structures, Plaintiffs–Respondents,**

v.

**Robert KERSEY and Vicki Kersey, husband and wife, d/b/a Best Contracting, Defendants–Appellants.**

No. 24657.

Supreme Court of Idaho, Boise, April 2002 Term.

Sept. 12, 2002.

Rehearing Denied Oct. 28, 2002.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for appellants. Larry C. Hunter and Charles C. Gill argued.

Clark & Feeney, Lewiston, for respondents. Paul T. Clark argued.

SCHROEDER, Justice.

This case involves a joint venture agreement between Ronald and Pam Trees ("Treeses"), doing business as United Structures, and Robert and Vicki Kersey ("Kerseys"), doing business as Best Contracting and Best Plumbing, in which the Kerseys would bid projects jointly with the Treeses under the Kerseys' name, pursuant to an oral agreement to divide all profits equally. The Treeses filed suit alleging, *inter alia*, breach of the agreement and fraud. Following a court trial, the Trees were awarded damages, punitive damages, costs and fees. The Kerseys appeal this decision.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The Treeses were engaged in business as general contractors, but lost their public works license and their bonding capacity. The Kerseys were also engaged in business as general contractors. Sometime in 1987–1988, Ronald Trees approached Robert Kersey about bidding a public works project involving the remodel of a city-owned building in Lewiston, Idaho, known as the Bell Building. Trees informed Kersey that he could not bid for the project because he had lost his bonding capacity. The parties entered into an agreement which provided that the Kerseys would bid on the project in their name, procure the bond, insurance, and pay the bills, and Trees would be responsible for

everything else, including acting as the general contractor on the job. The parties agreed to split the profits on a fifty-fifty basis. The Bell building project was completed sometime in 1988 or 1989, and the Kerseys paid the Trees their share of the profits.

The parties then bid for other projects, ultimately performing thirty-five to fifty jobs under the same arrangement. These projects consisted of public works projects requiring bonding, as well as other jobs that did not require bonding. The bids were prepared by the Kerseys and the Treeses and submitted under the name Best Contracting. The parties never discussed the terms of their agreement as it pertained to these subsequent projects. The Kerseys continued to procure the bond and insurance and pay the bills, and the Trees continued to perform as the general contractor and became responsible for framing, finishing work, carpentry work and some concrete work. The profits continued to be shared on a fifty-fifty basis, with the exception that the Kerseys were entitled to their bid price for any plumbing and mechanical work they performed on these jobs. During the course of the parties' agreement each also worked on jobs independently for which they did not share profits.

According to the Treeses, prior to 1995 the parties never discussed how costs were to be expensed on a particular job or whether the Treeses were entitled to an accounting. For a period of six years, the parties operated under a course of dealings whereby the Kerseys would provide the Treeses with a rough accounting for each job. These rough accountings sometimes included estimated costs rather than actual costs. The Kerseys would sometimes pay the Treeses fifty percent of the profits as calculated in the rough accountings.

In June 1995, the Treeses requested an accounting for two ongoing jobs: The University of Idaho elevator job and the University of Idaho food court job. The Kerseys refused the request. The Treeses filed a complaint against the Kerseys alleging that a joint venture agreement was formed by the parties, that the Treeses had performed all

the conditions required by the agreement, and that the Kerseys repudiated the agreement and refused to give a final accounting as required. The Treeses also requested an order terminating the venture. The Treeses subsequently amended the complaint to include claims for actual and constructive fraud, alleging that the Kerseys stood in a position of trust and confidence and failed to disclose or share the profits of the joint venture equally pursuant to the agreement. The Treeses also alleged that the Kerseys misrepresented the financial affairs of the joint venture, when they had a duty to speak and engaged in self-dealing by failing to disclose and divide the profits of the joint venture constituting a breach of a fiduciary duty owed to business partners.

Following a bench trial the district judge found that the parties entered into a joint venture agreement, the Kerseys had breached the terms of the joint venture agreement, the Kerseys had committed actual and constructive fraud, and had breached fiduciary duties owed to the Treeses. The district judge awarded the Treeses $332,049.66 in actual damages and $150,000 in punitive damages, as well as costs and fees.

## II.

### STANDARD OF REVIEW

On appeal this Court does not set aside findings of fact, unless they are clearly erroneous. I.R.C.P. 52(a); *Carney v. Heinson,* 133 Idaho 275, 281, 985 P.2d 1137, 1143 (1999); *Marshall v. Blair,* 130 Idaho 675, 679, 946 P.2d 975, 979 (1997). If a district judge's findings of fact are supported by substantial and competent, although conflicting, evidence, this Court will not disturb those findings. *Carney,* 133 Idaho at 281, 985 P.2d at 1143; *Marshall,* 130 Idaho at 679, 946 P.2d at 979. This Court gives due regard to the district judge's special opportunity to judge the credibility of witnesses who personally appeared before the judge. *Id.* The Court will not substitute its view of the facts for the view of the district judge. *Id.* However, unlike the Court's review of the district judge's findings of fact, the Court

exercises free review over the district judge's conclusions of law. *Id.*

## III.

### THE NATURE OF THE AGREEMENT AND THE REMEDY FOR FRAUD

1.  **The district court erred in enforcing an illegal agreement.**

The parties did not argue the illegality of the agreement until this appeal. The illegality of a contract, however, can be raised at any stage in litigation. The Court has the duty to raise the issue of illegality *sua sponte. Morrison v. Young,* 136 Idaho 316, 318, 32 P.3d 1116, 1118 (2001); *Quiring v. Quiring,* 130 Idaho 560, 566, 944 P.2d 695, 701 (1997). Whether a contract is illegal is a question of law for the court to determine from all the facts and circumstances of each case. *Morrison,* 136 Idaho at 318, 32 P.3d at 1118; *Quiring,* 130 Idaho at 566, 944 P.2d at 701 (citing *Stearns v. Williams,* 72 Idaho 276, 283, 240 P.2d 833, 840 (1952)). An illegal contract is one that rests on illegal consideration consisting of any act or forbearance which is contrary to law or public policy. *Quiring,* 130 Idaho at 566, 944 P.2d at 701 (citations omitted). The general rule is that a contract prohibited by law is illegal and unenforceable. *Id.; Williams v. Cont'l Life & Acc. Co.,* 100 Idaho 71, 73, 593 P.2d 708, 710 (1979); *Whitney v. Cont'l Life and Acc. Co.,* 89 Idaho 96, 105, 403 P.2d 573, 579 (1965). A contract "which is made for the purpose of furthering any matter or thing prohibited by statute ... is void." *Kunz v. Lobo Lodge, Inc.,* 133 Idaho 608, 611, 990 P.2d 1219, 1222 (Ct.App.1999) (quoting *Porter v. Canyon County Farmers' Mut. Fire Ins. Co.,* 45 Idaho 522, 525, 263 P. 632, 633 (1928)). This rule applies on the ground of public policy to every contract which is founded on a transaction prohibited by statute. *Id.* (citing *Porter,* 45 Idaho at 525, 263 P. 632, 633 (1928) (citations omitted)). The Idaho Court of Appeals has suggested that "where a statute intends to prohibit an act, it must be held that its violation is illegal, without regard to the reason of the inhibition ... or to the ignorance of the parties as to

the prohibiting statute." *Id.* (quoting 17A Am.Jur.2d *Contracts* § 251 (1991)).

Idaho's Public Works Contractors License Act ("PWCLA") (I.C. § 54–1901 *et seq.*) makes it unlawful for any individual or joint venture to engage in the business or act as a public works contractor[1] in the state of Idaho without a public works license. Idaho Code § 54–1902 provides:

> It shall be unlawful for any person to engage in the business or act in the capacity of a public works contractor within this state without first obtaining and having a license therefor, as herein provided, unless such person is particularly exempted as provided in this act, or for any public works contractor to subcontract in excess of eighty percent (80%) of the work under any contract to be performed by him as such public works contractor according to the contract prices therein set forth, unless otherwise provided in the specifications of such contracts. Nor shall a public works contractor accept a bid from any person who at the time does not possess the appropriate license for the project involved. Nor shall a public works contractor accept bids to sublet any part of any contract for specialty construction from a specialty contractor who at that time does not possess the appropriate license in accordance with this act; provided, however, that no contractor shall be required to have a license under this act in order to submit a bid or proposal for contracts for public works financed in whole or in part by federal aid funds, but at or prior to the award and execution of any such contract by the state of Idaho, or any other contracting authority mentioned in this act, the successful bidder shall secure a license as provided in this act.

I.C. § 54–1902 (1982).[2] This statute is applicable to joint ventures as the term "person" is defined to include "any individual, firm, copartnership,[3] corporation, association or other organization, or any combination thereof acting as a unit." I.C. § 54–1901(a) (1991).[4] This Court has previously noted that "[a] joint venture is . . . a relationship analogous to . . . a partnership." *Brummett v. Ediger*, 106 Idaho 724, 727, 682 P.2d 1271,

---

1. Idaho Code § 54–1901(b) defines a "public works contractor":

   "Public works contractor," which term is synonymous with the term "builder," "subcontractor" and "specialty contractor," and in this chapter referred to as "contractor" or "licensee," includes any person who, in any capacity, undertakes, or offers to undertake, or purports to have the capacity to undertake any construction, repair or reconstruction of any public work, or submits a proposal to, or enters into a contract with, the state of Idaho, or any county, city, school district, sewer district, fire district, or any other taxing subdivision or district of any public or quasi-public corporation of the state, or with any agency, or with any other public board, body, commission, department or agency, or officer or representative thereof, authorized to let or award contracts for the construction, repair or reconstruction of any public work.

2. In 1999, Idaho Code § 54–1902 was grammatically amended to read:

   **Unlawful to engage in public works contracting without license.**—It shall be unlawful for any person to engage in the business or act in the capacity of a public works contractor within this state without first obtaining and having a license, unless such person is particularly exempted as provided in this act. It shall be unlawful for any public works contractor to subcontract in excess of eighty percent (80%)

   of the work under any contract to be performed by him as such public works contractor according to the contract prices therein set forth, unless otherwise provided in the specifications of such contracts. Nor shall a public works contractor accept a bid from any person who at that time does not possess the appropriate license for the project involved. Nor shall a public works contractor accept bids to sublet any part of any contract for specialty construction from a specialty contractor who at that time does not possess the appropriate license in accordance with this act; provided, however, that no contractor shall be required to have a license under this act in order to submit a bid or proposal for contracts for public works financed in whole or in part by federal aid funds, but at or prior to the award and execution of any such contract by the state of Idaho, or any other contracting authority mentioned in this act, the successful bidder shall secure a license as provided in this act.

   Because this suit was filed prior to 1999, the statute in its unamended form is applicable.

3. The term copartnership is defined as a partnership. BLACK'S LAW DICTIONARY 335 (6th ed.1990).

4. The PWCLA was amended in 1999 to include limited liability companies and limited liability partnerships within the definition of "persons." This amendment is applicable to this statute.

1274 (1984); *Stearns v. Williams*, 72 Idaho 276, 284–85, 240 P.2d 833, 839 (1952).

Idaho Code section 54–1910(d) prohibits the Public Works Board from issuing a public works license to a joint venture unless all members of the joint venture are licensed:

No license shall be issued to a corporation, copartnership, or other combination or organization if any responsible officer of such corporation, or other combination or organization, or any member of such copartnership does not meet the qualifications required of an applicant other than those qualifications relating to knowledge and experience.

I.C. § 54–1910(d) (1969).[5]

The regulations promulgated under the PWCLA prohibit the transfer of a license from an individual to a joint venture: "The license certificate shall be non-transferable either to another person or to a successor business organization such as a copartnership, corporation, joint venture, or other combination thereof." IDAPA 07.05.01.500 (formerly IDAPA 32.01.01.500).

Individuals forming joint ventures are required to file an original application for a license for the joint venture:

A licensee who undergoes a change in business organization or structure (such as a change from an individual proprietor to a copartnership, ... [or] joint venture ...) must file an application on behalf of such successor organization within sixty (60) days after such change occurs.... ·

IDAPA 07.05.01.501 (formerly IDAPA 32.01.01.501); *see also* I.C. § 54–1911.[6]

Any "person" acting in the capacity of a public works contractor without a license is guilty of a misdemeanor. I.C. § 54–1920.[7]

The agreement in this case clearly violates the provisions of the PWCLA and is void.

The Treeses argue the fact that entering into a public works contract without a license is illegal does not mean the agreement is also illegal. However, a contract "which is made for the purpose of furthering *any* matter or thing prohibited by statute ... is void." *Lobo Lodge, Inc.* 133 Idaho at 611, 990 P.2d at 1222 (emphasis added).

---

**5.** Again, this statute was amended in 1999 to include limited liability companies and limited liability partnerships.

**6.** For the first four years of the parties' agreement, Idaho Code section 54–1911 provided that "the board is authorized to waive the thirty (30) day filing period on an application for a license for a joint venture, where all of the joint venture parties have complied with and are licensed public works contractors under all the provisions of this act." I.C. § 54–1911 (1980). In 1993, this language was deleted from this statute, thereby requiring joint ventures to comply with the time provisions for filing applications as set forth in the statute.

**7.** Idaho Code § 54–1920 (1969) provides:

Penalties.—Any person, firm, copartnership, corporation, association or other organization acting in the capacity of a public works contractor within the meaning of this act, without a license as herein provided, shall be guilty of a misdemeanor and shall, upon conviction thereof, if a person or persons, be punished by a fine of not to exceed three hundred dollars ($300.00) or by imprisonment in the county jail for a term not to exceed six (6) months or by both such fine and imprisonment, in the discretion of the court. The same penalties shall apply, upon conviction to any member of a

copartnership, or to any construction, managing or directing officer of any corporation or other organization consenting to, participating in, or aiding or abetting any such violation of this act.
....

This statute was subsequently amended in 1999 to include limited liability companies and limited liability partnerships, and increase the penalty for any violation, which now provides:

Penalties.—Any person, firm, copartnership, corporation, limited liability company, limited liability partnership, association or other organization acting in the capacity of a public works contractor within the meaning of this act, without a license as herein provided, shall be guilty of a misdemeanor and shall, upon conviction thereof, be punished by a fine not to exceed five thousand dollars ($5,000) or by imprisonment in the county jail for a term not to exceed one (1) year or by both such fine and imprisonment, at the discretion of the court. The same penalties shall apply, upon conviction to any member of a copartnership, or to any construction, managing or directing officer of any corporation, limited liability company or limited liability partnership, or other organization consenting to, participating in, or aiding or abetting any such violation of this act.
....

Idaho Code § 54–1920 (1999).

The Treeses also contend that the action against the Kerseys can be maintained because the agreement itself was not illegal; the agreement merely involved some projects that required a public works license and some projects that did not. In *McConnon v. Holden*, 35 Idaho 75, 204 P. 656 (1922), this Court stated, "when a plaintiff can maintain his cause of action without the aid of an illegal act or an illegal agreement, he will be entitled to recover." *Id.* at 82, 204 P. at 663; *see also Vancil v. Anderson*, 71 Idaho 95, 102, 227 P.2d 74, 77 (1951). This Court noted that if the contract is not separable and if any of its elements are tainted with illegality, albeit slight, the plaintiff cannot recover. *Id.* The district judge specifically found that the joint venture was limited to public works projects. Although it is apparent from the record that the agreement was not completely limited to public works projects, further findings would be required to differentiate among those projects that required a public license from those that did not. This issue need not be addressed in this appeal for the reasons set forth below.

 The Treeses argue that if the agreement is illegal, an exception for fraud should be applied to the general rule prohibiting the enforcement of illegal contracts. Idaho has not addressed the issue of whether an exception should be created to the general rule prohibiting enforcement of illegal contracts under these circumstances.[8] Other states have, however, invoked an exception in cases where fraud is present.[9]

 When a court invokes the illegality doctrine, it denies enforcement of the contract, leaving the parties where it finds them.

The rationale for leaving parties where the law finds them is premised on the notion that both parties are equally at fault. The doctrine normally applies as a common law defense against a party seeking to enforce an illegal contract. *"In pari delicto potior est conditio defendentis"* means that "[i]n a case of equal or mutual fault ... the position of the [defending] party ... is the better one." Black's Law Dictionary 791 (6th ed.1990).

Courts on occasion, however, apply an exception to the illegality doctrine where both parties concur in the illegal act, but the parties are not equally at fault by reason of that fact that one party commits fraud, or there is duress, oppression, or undue influence over the other. *See, e.g., Nat'l Bank & Loan Co. v. Petrie*, 189 U.S. 423, 23 S.Ct. 512, 47 L.Ed. 879 (1903) (agreement induced by fraud); *In re Resorts Int'l, Inc.*, 181 F.3d 505, 512 (3rd Cir.1999); *Singleton v. Foreman*, 435 F.2d 962, 969 (5th Cir.1970); *Gorringe v. Reed*, 23 Utah 120, 63 P. 902, 905–06 (1901). In such a situation the courts have allowed the less guilty party to recover. Some courts that have adopted this exception focus on the existence or nonexistence of confidential relations between the parties. *See Novak v. Nowak*, 216 Ind. 673, 25 N.E.2d 993 (1940); *Rogers v. Samples*, 207 Ky. 150, 268 S.W. 799 (1925).

 Barring the strict application of the illegality doctrine, the central focus must be whether the ends of the law will be furthered or defeated by granting the relief asked. *Sedco Int'l v. Cory*, 522 F.Supp. 254, 321 (1981). The Court is of the opinion that the ends of justice will be better served by

---

8. Idaho has recognized a few limited exceptions to the general rule. The first exception applies in cases where the agreement involves an innocent plaintiff and it is not declared void by statute. *See Williams v. Cont'l Life & Acc. Co.*, 100 Idaho 71, 73, 593 P.2d 708, 710 (1979) (citing 14 S. WILLISTON, *Contracts* § 1631 (3d ed.1972)). "Such innocence exists where the plaintiff is justifiably ignorant of the circumstances causing the illegality." *Id.*
　The second exception this Court has recognized concerns a void insurance contract, when its unenforceability may defeat the purpose for which a statute has been enacted. *Martinez v. Idaho Counties Reciprocal Mgmt. Program*, 134 Idaho 247, 252–53, 999 P.2d 902, 907–08 (2000);

*Williams*, 100 Idaho at 74, 593 P.2d at 711 (1979). In such a case, the Court has enforced the policy. *Id.*

9. *See, e.g., Nat'l Bank & Loan Co. v. Petrie*, 189 U.S. 423, 425, 23 S.Ct. 512, 512–13, 47 L.Ed. 879, 880 (1903) (agreement induced by fraud); *In re Resorts Int'l, Inc.*, 181 F.3d 505, 512 (3rd Cir.1999); *Singleton v. Foreman*, 435 F.2d 962, 969 (5th Cir.1970); *Pickens v. Am. Mortgage Exch.*, 269 Cal.App.2d 299, 303, 74 Cal.Rptr. 788 (1969); *Novak v. Nowak*, 216 Ind. 673, 25 N.E.2d 993–94 (1940); *Rogers v. Samples*, 207 Ky. 150, 268 S.W. 799, 800–01 (1925); *Gorringe v. Reed*, 23 Utah 120, 63 P. 902, 905–06 (1901).

adjusting the rights of the parties before it as indicated rather than by strict adherence to the illegality of contracts doctrine. The circumstances of this case dictate this result. The district judge found that a joint venture relationship existed between the parties. Joint venturers owe each other fiduciary duties. *See, e.g. Hecla Mining Co. v. Bunker Hill Co.,* 101 Idaho 557, 560, 617 P.2d 861, 864 (1980); *Saint Alphonsus Reg'l Med. Ctr., Inc. v. Krueger,* 124 Idaho 501, 508, 861 P.2d 71, 78 (Ct.App.1992). The district judge found many instances of fraudulent conduct by the Kerseys independent of the wrong to the public. Under these circumstances the Court will apply an exception to the illegality doctrine for fraud committed by one against the other.

The Kerseys argue this outcome will encourage unlicensed contractors to circumvent the requirements of the PWCLA by unlicensed contractors agreeing with licensed contractors to work on public works projects under their name. This holding should not produce such a result. Licensed contractors who act with unlicensed contractors run the precise risk of the outcome in this case, the risk of losing compensation for the project and perhaps the risk of losing their license and bonding.

The Kerseys point to Idaho Code § 54–1920, arguing that this section of the PWCLA clearly bars all actions in relation to the contract, including fraud. This section provides in relevant part:

> No person engaged in the business or acting in the capacity of a contractor, may bring or maintain *any action* in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this act without alleging and providing that he was a duly licensed contractor at all times during the performance of such act or contract.

(emphasis added). In *Day v. West Coast Holdings, Inc.,* 101 Nev. 260, 699 P.2d 1067, 1071 (1985), the Supreme Court of Nevada allowed an unlicensed contractor to maintain a suit for unjust enrichment despite a statute with identical prohibitive language as Idaho's statute barring "any action" for "any act or contract." [10] This ruling is persuasive. The Nevada Supreme Court focused on the fact the defendant had full knowledge of the plaintiffs' unlicensed status prior to the execution of the contract and knowingly and voluntarily entered into the contract. The Court noted that the plaintiffs completed their obligations under the contract to the defendant's benefit, finding the defendant should not be allowed to claim the benefit of the contract and then seek to avoid its liability. *Id.* The Kerseys cannot benefit from the agreement, to engage in fraudulent conduct and then seek to avoid enforcement of the agreement.

In sum, the joint venture agreement between the parties was illegal. However, the Treeses may recover against the Kerseys for fraud.

### 2. The district court did not err in finding actual fraud.

To prevail on an action for fraud or misrepresentation, the following elements must be established by clear and convincing evidence:

> (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury.

*Hines v. Hines,* 129 Idaho 847, 851, 934 P.2d 20, 24 (1997).

---

10. Nevada's statute, NRS 624.320, provides:
No person, firm, copartnership, corporation, association or other organization, or any combination thereof, engaged in the business or acting in the capacity of a contractor shall bring or maintain any action in the courts of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that such person, firm, copartnership, corporation, association or other organization, or any combination thereof, was a duly licensed contractor at all times during the performance of such act or contract and when the job was bid.

The Kerseys argue that the finding of actual fraud is clearly erroneous.[11] The district judge's finding of actual fraud was based upon Vickie Kersey's representation that she would provide bookkeeping services for the venture, and the Treeses' reliance on these bookkeeping services. The Kerseys made a unilateral decision to pay Vickie Kersey a salary and charge the salary to each project under employee payroll. Further, they understated gross income and overstated expenses on certain jobs and charged a percentage for bond insurance. The district judge found these discrepancies not to be apparent. It appears that Vickie Kersey had a difficult time explaining these entries, and the district judge found Robert Kersey not to be credible.

It does not appear that the Treeses were aware of the Kerseys' actions. Even if they knew the Kerseys were only preparing rough accountings, and intended to rely on them, they did not expect to be defrauded out of money or for Mrs. Kersey to skim money from the enterprise. This Court gives due regard to the district judge's special opportunity to judge the credibility of witnesses who personally appeared before the judge. I.R.C.P. 52(a); *Carney v. Heinson,* 133 Idaho 275, 281, 985 P.2d 1137, 1143 (1999); *Marshall v. Blair,* 130 Idaho 675, 679, 946 P.2d 975, 979 (1997). There were sufficient facts to find fraud by clear and convincing evidence.

### 3. The award of punitive damages is not appropriate.

Idaho Code § 6–1604(1) provides the circumstances under which an award of punitive damages is allowed. "In any action seeking recovery of punitive damages, the claimant must prove, by a preponderance of the evidence, oppressive, fraudulent, wanton, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." I.C. § 6–1604(1). Punitive damages are not favored in law and should be awarded in only the most unusual and compelling circumstances. *Manning v. Twin Falls Clinic & Hosp.,* 122 Idaho 47, 52, 830 P.2d 1185, 1190 (1992). "The foundational requirement is merely that some legally protected interest be invaded." *Crosby v. Rowand Mach. Co.,* 111 Idaho 939, 944, 729 P.2d 414, 419 (Ct.App.1986) (citations omitted).

While there was fraud, the agreement between the Treeses and the Kerseys was illegal. The Treeses knew that. Under these circumstances the award of punitive damages is not appropriate. The award of punitive damages is vacated.

### 4. The district court's judgment does not overstate the award of actual damages.

The district judge awarded the Trees $332,049.66 in actual damages, based upon an accounting the Treeses assembled to the best of their ability based upon the Kerseys' record keeping. It appears that the district judge identified the amount of money overcharged by the Kerseys or under-reported income for each job.

The Kerseys argue that the award is excessive because: (1) the award represents a profit margin of 50%, when the Treeses only expected the parties to generate an 18–25% profit margin; (2) the district judge failed to account for the Kerseys' plumbing and mechanical charges and failed to take account for change orders; and (3) the district judge failed to award the Kerseys $40,000 for the services Mr. Kersey expended on the Six Pines Project as the general contractor, under unjust enrichment or quantum meruit.

The method of damage calculation utilized by the district judge was based upon the amount of overcharges and understated income by each job. There is no indication that the award was based upon any type of profit calculation. The Kerseys disregard the method employed by the district judge to calculate damages. Although "[d]amages

11. The Kerseys do not contest the district judge's finding of constructive fraud, beyond arguing the finding of constructive fraud should be reversed if this Court finds the parties did not enter into a joint venture, as no fiduciary duty would be owed to the Treeses. The Kerseys do not specifically challenge the district judge's finding of a joint venture. Therefore this Court will not address the constructive fraud finding.

must be proven with reasonable certainty," rigid certainty is not required. *Gen. Auto Parts Co., Inc. v. Genuine Parts Co.*, 132 Idaho 849, 859, 979 P.2d 1207, 1217 (1999).

The Kerseys next maintain that the district judge failed to account for the Kerseys' plumbing and mechanical charges.[12] Again, the district judge found that the Kerseys had a responsibility to maintain adequate records and had the burden to demonstrate the accuracy of their accountings. The district judge found the testimony of Rob Kersey untrustworthy on several occasions, specifically stating that she found the "Kerseys' calculations were unsupported by the evidence," as their testimony was not credible. This Court gives due regard to the district judge's special opportunity to determine the credibility of witnesses who personally appeared before the judge. I.R.C.P. 52(a); *Carney v. Heinson*, 133 Idaho 275, 281, 985 P.2d 1137, 1143 (1999); *Marshall v. Blair*, 130 Idaho 675, 679, 946 P.2d 975, 979 (1997). The district judge weighed the evidence and concluded there was no evidence to support their claims for plumbing and mechanical charges.

■ Finally, the Kerseys argue that the district judge erred by not awarding the Kerseys $40,000 for the services Robert Kersey expended on the Six Pines Project as the general contractor, under unjust enrichment or quantum meruit. It is undisputed that the parties never agreed to pay him a salary. The Kerseys unilaterally decided to pay Robert a salary on the Six Pines Job. Robert Kersey had supervised other jobs without charging his labor as an expense. Robert Kersey was not entitled to draw a salary in this instance.

This Court finds that the award of actual damages is based on substantial and competent evidence.

### 5. Neither party is entitled to attorney fees on appeal.

■ Both the Kerseys and the Trees request attorney fees under Idaho Code § 12–120(3). Idaho Code § 12–120(3) provides:

In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

In *Brower v. E.I. DuPont De Nemours and Co.*, 117 Idaho 780, 792 P.2d 345 (1990), this Court held that an award of attorney fees under Idaho Code § 12–120(3) is justified only if a "commercial transaction comprises the gravamen of the lawsuit." *Id.* at 784, 792 P.2d at 349. The commercial transaction must be "integral to the claim" and constitute "the basis upon which the party is attempting to recover." *Kelly v. Silverwood Estates*, 127 Idaho 624, 631, 903 P.2d 1321, 1328 (1995); *Brower*, 117 Idaho at 784, 792 P.2d at 349. While both parties' claims are based upon the commercial relationship between them, neither party should be permitted to claim the benefit of I.C. § 12–120(3). The commercial transaction was illegal. In *Kunz v. Lobo Lodge, Inc.*, 133 Idaho 608, 612, 990 P.2d 1219, 1223 (Ct.App.1999), the Court of Appeals held the district court erred in awarding attorney fees under Idaho Code § 12–120(3) because the basis of the commercial transaction was illegal (the leases at issue were entered into knowingly and in direct contravention of a municipal criminal ordinance). The Court of Appeals, therefore, concluded the parties should be left where they were found. *Id.; Whitney*, 89 Idaho at 105, 403 P.2d at 579 (1965) (holding that if a contract is void as against public policy, then the court will refuse to enforce it and will leave the parties in the identical situation in which it found them); *Nash v. Meyer*, 54 Idaho 283, 31 P.2d 273 (1934) (citing as fundamental the position that rights based on violation of law will never be enforced by the courts and that when a transaction is shown to be illegal because of contravention of a statute, a court is justified in its refusal to uphold the transaction in any way); *Libby v. Pelham*, 30 Idaho 614, 166 P. 575 (1917) (asserting the position that if a transaction is illegal because in contravention to a statute,

---

12. The Kerseys claim the plumbing and mechanical charges were understated by $184,117.

it is sufficient to justify a refusal to uphold the transaction in any way, leaving the parties in the situation in which they have voluntarily placed themselves).

Additionally, the award of the district court was based upon the exception to the illegality doctrine for fraud which sounds in tort. The gravamen of this lawsuit is a tort. There is no basis under Idaho Code § 12–120(3) for an award.

The Court denies both parties' requests for attorney fees.

## IV.

## CONCLUSION

The joint venture between the Kerseys and the Treeses constitutes an illegal agreement. However, the Treeses may recover for fraud committed by the Kerseys. The award of punitive damages is reversed. Neither party is entitled to attorney fees on appeal.

Chief Justice TROUT sat, but did not participate.

Justices WALTERS, KIDWELL and EISMANN concur.