# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 43296

DAVID KOSMANN,

    Plaintiff- Respondent,

v.

LEO GILBRIDE,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Boise, November 2016 Term

2016 Opinion No. 146

Filed: December 12, 2016

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County.  Hon. Juneal Kerrick, District Judge.

The judgment of the district court is <u>affirmed</u>.

.

Kaufman Reid, PLLC, Boise, attorneys for appellant.  James G. Reid argued.

Greener Burke Shoemaker Oberrecht, PA, Boise, attorneys for respondent. Loren K. Messerly argued.

---

W. JONES, Justice

## I. NATURE OF THE CASE

Appellant, Leo Gilbride ("Gilbride"), contends that the district court erred by refusing his request for attorney's fees. The underlying dispute arose out of a sale of real property between Respondent, David Kosmann ("Kosmann"), and Gilbride, which was executed with the alleged understanding that Gilbride would re-convey the property back to Kosmann at a later time. After purchasing the property, with down payment funds provided by Kosmann, Gilbride refused to re-convey the property to Kosmann. Accordingly, on January 25, 2013, Kosmann filed a complaint against Gilbride alleging, *inter alia*, unjust enrichment and demanding specific performance of Gilbride's promise to re-convey the property. The district court dismissed the specific enforcement claim, awarded Kosmann $30,990 based on his unjust enrichment claim, and denied both parties' claims for attorney's fees.

On appeal, Gilbride argues that he was entitled to attorney's fees pursuant to the Real Estate Purchase and Sale Agreement, or Idaho Code section 12-120(3).

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Kosmann's sale of real property to Gilbride and an alleged oral agreement for Gilbride to re-convey the property back to Kosmann at a later time. Kosmann owned real property commonly known as 1020 W. Homedale Road, Caldwell, Idaho 83607 (the "Property"). The Property consists of a home, two shops, and an acre of open field.

In the summer of 2011, Kosmann became unable to make his mortgage payments. He owed about $260,000 on the Property, but it only appraised for $130,000. After failed attempts to refinance his loan, Kosmann contacted Justin McCarthy, a real estate agent. McCarthy explained that there were investors who would be available to purchase the Property and rent it back to Kosmann. After two sale and lease back agreements fell through with separate parties, Kosmann introduced McCarthy to Gilbride.[1] Gilbride and Kosmann first met in May 2012, and by "June or July . . . [Gilbride] offered to help [Kosmann] as a friend." Kosmann and Gilbride had similar backgrounds in the military. Gilbride offered to help Kosmann with the understanding that Gilbride would obtain the loan, but Kosmann would pay the down payment, closing costs, and also pay Gilbride "a couple hundred extra a month for his trouble until such time [Kosmann] could regain possession of the home."

Under this arrangement, Gilbride allegedly orally promised to help Kosmann obtain a short sale[2] of the Property and thereafter: (1) allow Kosmann to reside and operate his restoration business at the Property, and (2) allow Kosmann an opportunity to buy the Property back at a later time. On September 24, 2012, Kosmann and Gilbride executed the Real Estate Purchase and Sale Agreement (the "REPSA"). The REPSA provided as follows: "Offer is contingent upon 3rd party bank (GMAC) releasing the mortgage as paid in full, and releasing rights to pursuit of a deficiency judgment. Seller will rent the property back from the buyer for a term of not less than 1 year." A short sale was arranged with the lender, GMAC, but in order to get the short sale

---

[1] The specific facts regarding McCarthy's role in this transaction are unclear. Nonetheless, his apparent willingness to be involved in this fraudulent transaction raises serious concerns regarding his professional ethics.

[2] "A short sale occurs when a property is sold at a price lower than the amount the homeowner owes on the mortgage, and the homeowner's mortgage lender(s) agrees to the 'short' payoff. A lender might accept a short sale with the property worth less than the balance of the mortgage, if the borrower cannot continue to make the monthly loan payment, does not have enough money to pay back the full balance of loan and needs to move out of the property." *Buying a Short Sale Property*, Freddie Mac, http://www.freddiemac.com/purchasemarket/ssfaq.html.

2

approved, Kosmann and Gilbride were required to sign a Short Payoff Arms-Length Affidavit, which included the following:

> There are no agreements, understandings or contracts between the parties that the Borrower will remain in the Mortgage Premises as a tenant or later obtain title or ownership of the Mortgaged Premises, except to the extent that the Borrower is permitted to remain as a tenant on the Mortgaged Premises for a short term, as is common and customary in the market, but no longer than ninety (90) days, in order to facilitate relocation.
>
> . . .
>
> There are no agreements, understandings or contracts relating to the current sale or subsequent sale of the Mortgage Premises that have not been disclosed to [GMAC].
>
> . . .
>
> Each signatory understands, agrees and intends that the Servicer and Investor are relying upon the statements made in the affidavits as consideration for the reduction of the payoff amount of the Mortgage and agreement to the sale of the Mortgage Premises.

Before closing, Kosmann paid Gilbride $29,990 to cover the down payment and closing costs of the sale. When it came time to sign at closing, in late December 2012, Kosmann learned that the total closing costs were $31,600. Accordingly, he paid Gilbride an additional $1,000.

The short sale resulted in GMAC being defrauded: GMAC was led to believe, according to the Short Payoff Arms-Length Affidavit, that no understanding existed between Kosmann and Gilbride relating to Kosmann later obtaining ownership of the Property or remaining in possession of the Property for more than 90 days. In fact, such an understanding existed.

Apparently, Gilbride was not satisfied with only defrauding GMAC because after the transaction closed, Gilbride turned on his co-conspirator. On December 27, 2012, Kosmann received a Residential Rental Agreement ("Rental Agreement") from Gilbride, which required a rental payment of $1,733 per month. Kosmann testified that the Rental Agreement did not contain any of the terms that had been previously agreed upon, namely, that rent would be "a couple of hundred beyond the costs of the loan [and] insurance" and that they would enter a "90-day lease option to buy." Simply put, Gilbride was attempting to double-cross Kosmann. Kosmann did not sign the Rental Agreement. Recognizing that Gilbride was "not going to honor any of his word and do any of the things that he said he was going to do," Kosmann set up a meeting to talk with Gilbride. At the meeting, it became clear to Kosmann that Gilbride was

3

"changing the deal rapidly and . . . forcing [him] to sign [the Rental Agreement] within 24 hours."

On January 25, 2013, Kosmann filed a complaint and demand for jury trial, which demanded specific performance and alleged: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; and (3) unjust enrichment. On February 19, 2013, Gilbride filed an answer and counterclaim alleging breach of contract and demanding the ejectment of Kosmann from the Property. By order entered August 9, 2013, the district court granted Gilbride's motion for summary judgment dismissing the breach of contract and breach of covenant of good faith and fair dealing claims. On August 14, 2013, Kosmann filed an amended complaint adding an allegation of fraud against Gilbride. On September 17, 2013, Gilbride filed an answer to the amended complaint and also amended his counterclaim to include an allegation of unlawful detainer.

A four-day jury trial commenced on January 27, 2015. At the conclusion of Kosmann's case-in-chief, Gilbride moved for an order dismissing the remaining claims against him. The district court: (1) reserved decision on the motion to dismiss as it related to Kosmann's fraud claim against Gilbride; (2) denied the motion as to the unjust enrichment claim; and (3) granted Gilbride's motion to dismiss the specific performance claim "because the evidence did not establish a contract sufficiently definite in its terms to be specifically enforced." The parties stipulated to conduct the remainder of the trial as a bench trial.

On March 30, 2015, the district court issued its Memorandum Decision Following Court Trial. Therein, the district court concluded as follows: (1) Kosmann was entitled to $30,990 for his unjust enrichment claim; (2) Kosmann's remaining claims were dismissed; and (3) Gilbride was entitled to judgment regarding his counterclaim for ejectment. The district court issued a judgment consistent with its memorandum.

On April 10, 2015, Gilbride filed a motion for attorney's fees and costs. Therein, he argued, *inter alia*, that he was entitled to costs and attorney's fees as the prevailing party under Idaho Rule of Civil Procedure 54 in conjunction with Idaho Code section 12-120(3) and the attorney's fees provision of the REPSA.

On April 27, 2015, Kosmann filed a memorandum opposing Gilbride's motion for attorney's fees and costs. Therein, Kosmann argued, *inter alia*, that: (1) Gilbride was not a

4

prevailing party, and (2) Idaho Code section 12-120(3) was inapplicable to the case because a commercial transaction was not the gravamen of the lawsuit.

A hearing was held on the parties' respective motions for attorney's fees and costs on June 11, 2015. On June 18, 2015, the district court issued its Order on Motions to Disallow Costs and Fees. The district court held as follows: (1) Kosmann was not a prevailing party because Gilbride prevailed on the main issue in the litigation, that is, whether Kosmann was entitled to specific performance of, or damages for, Gilbride's breach of the alleged oral agreement; (2) Gilbride prevailed on the primary issue in this litigation and was therefore entitled to $1,732.25 for costs as a matter of right under Idaho Rule of Civil Procedure 54(d)(1); (3) Gilbride was not entitled to attorney's fees under Idaho Code section 12-120(3) because he did not establish that the gravamen of the action involved a commercial transaction; and (4) Gilbride was not entitled to attorney's fees pursuant to the terms of the REPSA because the main issue of the litigation was an alleged oral agreement that was "entirely separate and distinct from the [REPSA]." The district court issued an amended judgment reflecting its decision to award Gilbride costs as a matter of right.

Gilbride timely appealed the district court's decision regarding attorney's fees.

### III. ISSUES ON APPEAL

1. Whether the district court erred when it concluded that neither the REPSA, nor Idaho Code section 12-120(3) supported an award of attorney's fees.

2. Whether either party is entitled to attorney's fees on appeal.

### IV. STANDARD OF REVIEW

"The awarding of attorney fees and costs is within the discretion of the trial court and subject to review for an abuse of discretion." *Smith v. Mitton*, 140 Idaho 893, 897, 104 P.3d 367, 371 (2004). "When a judgment on appeal reaches the correct conclusion, but employs reasoning contrary to that of this Court, we may affirm the judgment on alternate grounds." *Martel v. Bulotti*, 138 Idaho 451, 454–55, 65 P.3d 192, 195–96 (2003).

### V. ANALYSIS

**A.** **We affirm the district court's decision not to award attorney's fees on alternate grounds.**

Gilbride makes two arguments. First, he argues that the district court erred when it concluded that he was not entitled to attorney's fees pursuant to the attorney's fees provision in the REPSA. Second, Gilbride argues that the litigation "stemmed from a commercial

5

transaction;" thus, he contends that the district court erred in concluding that Idaho Code section 12-120(3) did not apply.

Kosmann characterizes Gilbride's first argument as "an overly broad and erroneous interpretation of the [REPSA]." He argues that the district court correctly concluded that the REPSA did not support an award of attorney's fees to Gilbride. Specifically, Kosmann notes that the main issue of the litigation—the alleged oral agreement to re-convey the Property—was entirely separate from the REPSA. Kosmann also argues that the district court correctly concluded that Idaho Code section 12-120(3) was not applicable.

Both Kosmann and Gilbride encourage this Court to engage in an analysis of the attorney's fees provision in the REPSA and Idaho Code section 12-120(3). However, analyzing the REPSA and Idaho Code 12-120(3) is not necessary. Rather, the attorney's fees issue presented by this appeal is resolved by our decision in *Trees v. Kersey*. 138 Idaho 3, 56 P.3d 765 (2002).

*Trees* involved two general contractors: (1) Kersey, who was able to bid on projects, and (2) Trees, who was unable to do so because he lost his public works license and bonding capacity. *Id.* at 5, 56 P.3d at 767. Kersey agreed to bid on projects, procure the bond, insurance, and pay the bills, and Trees would be responsible for everything else, including acting as the general contractor on the job. *Id.* Their relationship soured when Kersey refused Trees' request for accounting on two jobs. *Id.* Trees filed a complaint alleging breach of contract and fraud. *Id.* at 6, 56 P.3d at 768. The district court ruled in favor of Trees, and Kersey appealed. *Id.* This Court held that the agreement between the parties violated the provisions of Idaho's Public Works Contractors License Act and was illegal and void. *Id.* at 8, 56 P.3d at 770. Further, this Court held that because the parties' agreement was void, neither should be permitted to claim the benefit of Idaho Code section 12-120(3). *Id.* at 12, 56 P.3d at 774. In so holding, this Court cited *Whitney v. Continental Life & Acc. Co.*, 89 Idaho 96, 105, 403 P.2d 573, 579 (1965), which stands for the proposition that "if a contract is void as against public policy, then the court will refuse to enforce it and will leave the parties in the identical situation in which it found them." *Trees*, at 12, 56 P.3d at 774. In sum, *Trees* demonstrates that parties who enter an agreement that is illegal or void against public policy are not permitted to benefit from a contractual attorney's fees provision or an attorney's fees statute.

The agreement orchestrated by McCarthy and executed by Kosmann and Gilbride was fraudulent and violated public policy. As noted above, by signing the Short Payoff Arms-Length Affidavit, both Kosmann and Gilbride represented to GMAC that there was no underlying agreement or understanding between them to re-convey title back to Kosmann; however, an underlying agreement—albeit an unenforceable agreement—in fact existed. Thus, the entire real estate transaction hinged on a misrepresentation to GMAC and violated public policy. Therefore, pursuant to *Trees* and the cases cited therein, neither party will be permitted to benefit from Idaho Code section 12-120(3) or the attorney's fees provision in the REPSA. In conclusion, neither the law, nor this Court will offer assistance to parties engaging in conduct that is illegal or violative of public policy.

**B.      Neither party is entitled to attorney's fees on appeal.**

Gilbride argues that he is entitled to attorney's fees on appeal pursuant to the REPSA and Idaho Code section 12-120(3). Kosmann argues that he is entitled to attorney's fees according to Idaho Code section 12-121 because Gilbride's appeal was frivolous, unreasonable and without foundation. Alternatively, Kosmann argues that Idaho Appellate Rule 11.2 supports an award of attorney's fees because Gilbride brought the appeal with the improper purpose of "trying to benefit from his deceit and to further harm Kosmann financially."

Neither party is entitled to attorney's fees on appeal for the same reasons stated above—this Court refuses to assist wrongdoers.

## VI. CONCLUSION

The judgment of the district court is affirmed.

Chief Justice J. JONES and Justices EISMANN, BURDICK and HORTON, CONCUR.