# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43315-2015

JOSE LUIS GARCIA and MARIA GARCIA, )
                                         )
           **Plaintiffs-Appellants,** )
                                           )
**v.** )
                                           )
**ABSOLUTE BAIL BONDS, LLC., and** )
**WALTER ALMARAZ,** )
                                           )
           **Defendants.** )
                                           )

**Boise, November 2016 Term**

**2016 Opinion No. 150**

**Filed: December 21, 2016**

**Stephen W. Kenyon, Clerk**

---

Appeal from the District Court of the Third Judicial District of the State of Idaho, in and for Canyon County. Hon. George A. Southworth, District Judge.

The judgment of the district court is <u>affirmed</u>.

Richard L. Hammond, Hammond Law Office, Caldwell, submitted a brief on behalf of the appellant.

The respondent did not submit a brief on appeal.

---

EISMANN, Justice.

This is an appeal out of Canyon County from a judgment against a bail bondsman who revoked a bail bond for an illegal alien at the request of an agent of United States Immigration and Customs Enforcement. The district court awarded damages in the amount of the bail bond premiums, and the appellants contend on appeal that they were entitled to additional damages. We affirm the judgment of the district court.

## I.
## Factual Background.

On October 14 or 15, 2012, Jose Luis Garcia was arrested in Canyon County for driving under the influence of alcohol ("DUI"), and he was also arrested under an outstanding warrant issued in another case in which he was charged with petit theft and attempted petit theft. Mr. Garcia was thirty-one years of age and had entered the United States illegally when he was an

adult.  At about 8:30 a.m. on October 15, 2012, Maria Garcia, his mother, paid Walter Almaraz, a bail bondsman, to obtain bail bonds for the two cases.  Mr. Almaraz was an agent of Absolute Bail Bonds, LLC.  Prior to making the payment, Ms. Garcia informed Mr. Almaraz that Jose Garcia was an illegal alien and that she wanted him bonded out quickly before United States Immigration and Customs Enforcement ("ICE") placed a "hold" (immigration detainer) on him. Mr. Almaraz posted the bail bond in the petit theft case on October 15, 2012, and he posted the bail bond in the DUI case on the next day.  He then received a telephone call from an ICE agent who told him to revoke the bail bonds, and Mr. Almaraz did so before Jose Garcia was released from jail.  On October 17, 2012, ICE placed an immigration hold on him.

Jose Garcia pled guilty to the petit theft charge on January 22, 2013, and he was sentenced the following week.  The DUI charge was amended to driving under the influence of alcohol with an excessive alcohol concentration of 0.20.  He pled guilty to that charge on December 21, 2012, and on March 18, 2013, he was sentenced.  Upon completing the unsuspended portions of his jail sentences for petit theft and DUI, he was released from jail into the custody of ICE on May 3, 2013, and deported to Mexico.

On May 2, 2013, Jose Garcia and Ms. Garcia filed this action against Mr. Almaraz and Absolute Bail Bonds, LLC, seeking to recover damages for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, failure to provide records and an accounting, and bad faith breach of contract.  The Defendants were served with the summons and complaint and a request for admissions, but they did not appear in this action.  On July 19, 2013, the Plaintiffs filed a motion for entry of default against them, and on December 13, 2013, the court entered their default.  On November 12, 2013, the Defendants filed the affidavit of Ms. Garcia seeking a default judgment against the Defendants.

The district court set the case for a hearing for entry of a default judgment on April 23, 2015.  On the morning of the hearing, the Plaintiffs filed a motion seeking to amend their complaint to add a claim for punitive damages and a supporting affidavit of counsel.  At the hearing, the court questioned the Plaintiffs' counsel about the claimed damages and took under advisement the motion to amend the complaint.  On April 27, 2015, the Plaintiffs filed two additional affidavits seeking punitive damages and a judgment.

On May 6, 2015, the district court issued its memorandum decision addressing the motion to amend and the amount of damages.  The court denied the motion to amend the

complaint to add a prayer for punitive damages, and it awarded damages of $3,300.00, which it stated was the total amount of the premiums on the bail bonds.[1] The court found that the consequential damages claimed were not caused by the conduct of the Defendants. The court also awarded the Plaintiffs $2,500.00 in attorney fees, which is the amount requested in the complaint if judgment was entered by default. On May 6, 2015, the court entered a judgment awarding the Plaintiffs damages against the Defendants in the sum of $5,800, and the Plaintiffs timely appealed.

## II.
## Did the District Court Err in Denying the Motion for Recusal?

"A motion to disqualify for cause must be accompanied by an affidavit of the party or the party's attorney stating the specific grounds upon which disqualification is based and the facts relied upon in support of the motion." I.R.C.P 40(b)(2). "An affidavit includes a written certification or declaration made as provided in Idaho Code section 9-1406." I.R.C.P. 2.7. Idaho Code section 9-1406 permits an affidavit to be a dated and signed "unsworn certification or declaration, in writing, which is subscribed by such person and is in substantially the following form: 'I certify (or declare) under penalty of perjury pursuant to the law of the State of Idaho that the foregoing is true and correct.'" On December 5, 2013, the Plaintiffs filed a motion to recuse the district court for cause. The only part of the motion that would qualify as an affidavit under the statute was the initial paragraph, which began:

> The Plaintiff in the above entitled action, by and through his attorney of record, Richard Hammond, hereby respectfully requests this Honorable Court to recuse himself, be removed under IRCP 40(d)(2) or reconsider its position stated in chambers to deny consequential damages to a person due to his or her immigration status.
> AFFIDAVIT
> Richard L. Hammond certifies and declares under penalty of perjury pursuant to the law of the state of Idaho that the *foregoing* is true and correct to the best of my personal knowledge:

(Emphasis added.)

---

[1] According to the unsworn statements made by Ms. Garcia, she paid an $800.00 premium for the bail bond in the DUI case and a $500.00 premium for the bail bond in the petit theft case. In its decision determining the amount of damages, the district court wrote, "The evidence shows the cost of those bonds to Plaintiffs was $3,300.00." There were no sworn or unsworn statements supporting that finding.

3

The word *foregoing* means "previously stated, written, or occurring; preceding." http://www.dictionary.com/browse/foregoing (accessed: October 20, 2016). What was previously stated was simply the request that the court either recuse itself or "reconsider its position stated in chambers to deny consequential damages to a person due to his or her immigration status." There is no statement as to the words said or the context in which they were said, nor was there a transcript of what was said. It is necessary that the affidavit supporting the motion must state "the specific grounds upon which disqualification is based and the facts relied upon in support of the motion," rather than merely conclusory allegations. Without stating the facts relied upon, the motion could simply be based upon a misunderstanding or mischaracterization of what was said or done. For example, the Plaintiffs' motion contained seven pages of argument, from which it appears that the objection was to the district court questioning whether the asserted consequential damages were caused by the Defendants or by the fact that Mr. Garcia was subject to deportation because he had entered this country illegally. Because the Plaintiffs' motion was not supported by an affidavit that complied with Rule 40(b)(2), we need not address on appeal whether the district court erred in denying the motion.

### III.
### Did the District Court Sua Sponte Rule That Consequential Damages Were Not Allowed Due To The Immigration Status Of The Party?

The Plaintiffs assert that "The District Court erred as a matter of law when the Court sua sponte ruled that consequential damages were not allowed due to the immigration status of the party." They also allege, "The District Court's sua sponte action to raise an affirmative defense on behalf of the Respondents and order that the Appellants are not eligible for consequential damages due to the immigration status is improper, violates due process and Equal Protections [sic] laws, is not supported by law and should be overturned." They contend that "[t]he District Court was not given adequate notice or opportunity to respond to prevent the orders herein" and "[f]urther, the decision cannot be based on arguments or facts not before the court."

The Plaintiffs' argument indicates a lack of understanding regarding the meaning of the words *sua sponte*. They mean "[w]ithout prompting or suggestion; on its own motion." <u>Black's Law Dictionary</u> 1437 (7th ed. 1999). Ruling that the Plaintiffs failed to prove that all of the damages they claimed were caused by the Defendants is not making a *sua sponte* ruling.

4

When default has been entered against a defendant and the claim is for a sum certain or a sum that can be made certain by computation, the party seeking a default judgment must present an affidavit showing the amount due and the method of computation of that amount. I.R.C.P. 55(b)(1). In this case, the Plaintiffs' complaint did not allege the amount of damages claimed for the various claims alleged. In their complaint, the Plaintiffs alleged that the Defendants "caused Plaintiffs damages in an amount established in trial including but not limited to over six months of incarceration, loss of wages, loss of service, loss of companionship, etc." They then alleged:

18. There are certain elements of damages provided by law that Plaintiffs are entitled to have the jury consider in determining the sum of money that will fairly and reasonably compensate him for his damages caused by the acts of the Defendants and those elements of damage include, but are not limited to, the following, both up to the time of trial and in the future:

a. Expenses and damages stemming from Plaintiff's failure to be released from custody;

b. Damages suffered by Plaintiff as a result of being incarcerated for an extended period of time including, lost earnings and lost earning capacity sustained and to be sustained by Plaintiff and loss of liberty.

c. The reasonable amount necessary to reimburse Plaintiff for time spent on additional tasks necessitated by this injury, such as seeking further legal help;

d. Recovery for damages to property and/or lost property;

e. Reasonable attorney fees; and

f. The costs of prosecuting and presenting the evidence in this case.

g. The other natural and foreseeable consequences caused by failure to ensure that the Plaintiff Jose Luis Garcia's bond was posted and not revoked and spending the subsequent time in custody.

19. The above paragraphs are included in each cause of action below.

The prayer did allege that the damages did not exceed $35,000 in order to comply with Idaho Code section 12-120(1), which provides that "in any action where the amount pleaded is thirty-five thousand dollars ($35,000) or less, there shall be taxed and allowed to the prevailing party, as part of the costs of the action, a reasonable amount to be fixed by the court as attorney's fees."

Because the complaint did not allege a sum certain or a sum that could be made certain by calculation, the Plaintiffs were required to apply to the district court for a default judgment. I.R.C.P. 55(b)(2). They did so, and the district court could then "conduct hearings or make referrals when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D)

5

investigate any other matter." I.R.C.P. 55(b)(2). The purpose of the hearing is not simply for the court to rubber stamp the damages asserted by the Plaintiffs.

On November 12, 2013, the Plaintiffs filed a document titled "Affidavit for Default Judgment." It began, "MARIA GARCIA certifies and declare under penalty of perjury pursuant to the law of the state of Idaho that the foregoing is true and correct to the best of my personal knowledge." The only writing that was *foregoing* was the caption of the document. There were assertions of fact following the declaration, but the declaration did not apply to them by its terms.

On April 27, 2015, the Plaintiffs filed a document titled "Another Affidavit of Maria Garcia re Punitive Damages and Judgment." The second paragraph of that document stated, "MARIA GARCIA certifies and declare under penalty of perjury pursuant to the law of the state of Idaho that the foregoing is true and correct to the best of my personal knowledge." The only writing that was *foregoing* was the caption and the statement, "Comes now the Plaintiffs and submit this Another Affidavit of Maria Garcia in Support of the Motions filed herein including the Motion to Amend the Complaint to include Punitive Damages and in support of the Damages sustained." There were assertions of fact following the declaration, but the declaration did not apply to them by its terms.

On April 28, 2015, the Plaintiffs filed a document titled "Affidavit of Dulce I. Garcia re Punitive Damages and Judgment." The second paragraph of the document began, "DULCE I. GARCIA certifies and declare under penalty of perjury pursuant to the law of the state of Idaho that the foregoing is true and correct to the best of my personal knowledge." The only writing that was *foregoing* was the caption and the statement, "Comes now the Plaintiffs and submit this Affidavit of Dulce I. Garcia in Support of the Motions filed herein including the Motion to Amend the Complaint to include Punitive Damages and in support of the Damages sustained." There were assertions of fact following the declaration, but the declaration did not apply to them by its terms.

Thus, the Plaintiffs did not submit any affidavits setting forth the damages claimed. The Plaintiffs' assertions, unsupported by any affidavits, were that they were entitled to: $1,300.00 for the premiums for the two bail bonds; Jose Garcia's lost wages in the amount of $9.50 per hour for 45 hours per week; Ms. Garcia's lost wages for approximately 20 days of work at $9.00 per hour and nine hours per day; Jose Garcia's loss of his trailer because Ms. Garcia could not pay the fees due to the money paid to the Defendants; Jose Garcia's loss of his car because Ms.

6

Garcia sold it to hire an attorney, her suffering deep depression due to the loss of her son while he was in jail and after he was deported; and an additional ten days of lost work for Ms. Garcia because she had gone to the border twice seeking to have ICE permit Mr. Garcia to come back into the United States.

In this case, the district court had to determine the amount of damages that the Plaintiffs were entitled to recover. Walter Almaraz, the bail agent, may have been liable for the return of the premiums. I.C. § 41-1044(1). Consequential damages recoverable for breach of contract must be those which "were reasonably foreseeable and within the contemplation of the parties at the time they made the contract." *Suitts v. First Sec. Bank of Idaho, N.A.*, 110 Idaho 15, 22, 713 P.2d 1374, 1381 (1985). The Plaintiffs did not present the bail contract to the district court. With respect to their consequential damages claimed, they had the burden of showing not only that they were within the contemplation of the parties at the time of contracting, but also that the claimed damages were caused by the breach of contract. *O'Shea v. High Mark Dev., LLC*, 153 Idaho 119, 129–30, 280 P.3d 146, 156–57 (2012).

The Plaintiffs contend that the district court ruled that, as a matter of law, "that consequential damages were not allowed due to the immigration status of the party." That assertion mischaracterizes the court's ruling. The district court found that they had failed to prove that the claimed consequential damages were caused by the Defendants. Rather, the court found that they were caused by the immigration hold by ICE due to Mr. Garcia's illegal entry into the United States.

As a matter of public policy, a person is not liable for damages allegedly caused by failing to enable the illegal alien to evade deportation. Allowing the recovery of such damages would be analogous to permitting recovery for breaching an illegal contract. This Court "has the duty to raise the issue of illegality *sua sponte*." *Trees v. Kersey*, 138 Idaho 3, 6, 56 P.3d 765, 768 (2002). "Whether a contract is illegal is a question of law for the court to determine from all the facts and circumstances of each case. An illegal contract is one that rests on illegal consideration consisting of any act or forbearance which is contrary to law or public policy." *Id*. A contract to enable an illegal alien to evade deportation would be contrary to public policy. For the same reason that such a contract would be unenforceable, damages allegedly resulting from failing to enable an illegal alien to evade deportation are not recoverable. The Plaintiffs have not shown that the district court erred in failing to award more damages.

7

# IV.
## Did the District Court Err in Failing to Award Damages under the Idaho Consumer Protection Act?

In their third cause of action, the Plaintiffs alleged that the revocation of the bail bonds constituted an unconscionable method, act, or practice pursuant to Idaho Code section 48-603C, which is part of the Idaho Consumer Protection Act. They contend on appeal that the district court erred in failing to award damages under that Act. In their affidavits submitted in support of a default judgment, they did not set forth any claimed damages under that Act, nor did they even mention the Act. In order to obtain damages in a default judgment, the Plaintiffs had the burden of presenting their claimed damages to the district court. The court is not required to go through the complaint and arbitrarily pick amounts to award under the various claims alleged.

# V.
## Did the District Court Err in Denying the Plaintiffs' Motion to Amend their Complaint to Add a Claim for Punitive Damages?

On April 23, 2015, after default was entered, the Plaintiffs filed a motion to amend their complaint to add a claim for punitive damages. Idaho Code section 6-1604(1) permits the awarding of punitive damages if the party seeking such damages "prove[s], by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." When a party moves to amend a pleading to include a prayer for punitive damages, "[t]he court shall allow the motion to amend the pleadings if, after weighing the evidence presented, the court concludes that, the moving party has established at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." *Id.*

"A trial court's ruling on a motion to amend a complaint to add a claim for punitive damages is reviewed for an abuse of discretion." *Weinstein v. Prudential Prop. and Cas. Ins. Co.*, 149 Idaho 299, 311, 233 P.3d 1221, 1233 (2010). "To determine whether a trial court has abused its discretion, this Court considers whether it correctly perceived the issue as discretionary, whether it acted within the boundaries of its discretion and consistently with

applicable legal standards, and whether it reached its decision by an exercise of reason." *Reed v. Reed*, 137 Idaho 53, 57, 44 P.3d 1108, 1112 (2002).

The Plaintiffs submitted three affidavits in support of their motion to amend their complaint to include a prayer for punitive damages. The Affidavit of Counsel to Include Punitive Damages began, "Richard L. Hammond certify and declare under penalty of perjury pursuant to the law of the state of Idaho that the foregoing is true and correct to the best of my personal knowledge." The only *foregoing* writing was the caption of the document. Likewise, the other affidavits, discussed above, did not include any facts within the scope of the declarations.

The Plaintiff did serve requests for admissions on the Defendants, which went unanswered and were therefore deemed admitted. I.R.C.P. 36(a)(4). The relevant matters deemed admitted included that Mr. Almaraz revoked Mr. Garcia's bonds "because the ICE agent advised him to revoke the bond" and that Mr. Almaraz "revoked the one or more bond(s) bond [sic] for Jose Luis Garcia despite previously knowing of our client's immigration problems."

The Plaintiffs have not shown that the district court abused its discretion in denying their motion to amend their complaint to include a prayer for punitive damages. Acceding to the command of an ICE agent so that Mr. Garcia could not evade deportation did not constitute oppressive, fraudulent, malicious or outrageous conduct.

## VI.
### Are the Plaintiffs Entitled to an Award of Attorney Fees on Appeal?

The Plaintiffs request an award of attorney fees on appeal pursuant to Idaho Code section 12-120(1). Attorney fees are only awardable under that statute to the prevailing party. Because the Plaintiffs are not the prevailing party on appeal, they are not entitled to an award of attorney fees under that statute.

## VII.
### Conclusion.

We affirm the judgment of the district court.

Justices W. JONES and HORTON **CONCUR.**

9

Chief Justice J. JONES, concurring in the result.

I concur in the result of the Court's opinion. My reservations about fully concurring are: (1) my preference would be to refer to Mr. Garcia as an "undocumented alien," which might be an exercise in political correctness but not unwarranted given the charged atmosphere on immigrants that currently exists in the country; (2) I would forego the discussion of the declaration/affidavits because, although they were arranged awkwardly, they are largely irrelevant to the determination of the contract claim at issue here; and (3) I see no need to base the opinion on the ground of illegality, which could cause some confusion amongst members of the Bar in future cases. I would affirm the district court based on the fact that the plaintiffs failed to adequately establish the terms of any contract between them and the defendants. The bail contract is not contained in the record. There is no indication as to how the oral contract alleged by the plaintiffs might have been affected by the bail contract. The terms of the oral contract are presented with less than clarity. Further, the district court observed:

> I can understand a cause of action to refund the bond premium and attorney's fees and costs for that bond premium. I don't know that this Court or any court in the United States could enter an order for consequential damages because an undocumented alien who an immigration hold was placed on by ICE lost his job. That's not the bondsman's fault for doing that.

Thus, the district court properly held that any claimed breach of the alleged oral contract was not the proximate cause of any consequential damages claimed by the plaintiffs.

Justice BURDICK CONCURS.